KOOCK et al. v. GOODNIGHT et ux.
No. 7941.

Court of Civil Appeals of Texas. Austin.
March 21, 1934.

Rehearing Denied May 16, 1934.

White, Taylor & Gardner, of Austin, and R. E. McKie, of San Marcos, for appellant.

E. M. Cape and Will G. Barber, both of San Marcos, for appellee.

BAUGH, Justice.

This was a suit for damages for personal injuries to Ella May Goodnight, wife of A. C. Goodnight, resulting from being struck by an automobile driven by E. A. Jordan, on highway No. 2, between Austin and San Marcos. The collision occurred about 8 o'clock on the morning of October 7, 1930, a few miles northeast of the city of San Marcos. Trial was to a jury, and, upon their answers to special issues finding Jordan guilty of negligence in several different respects, judgment was rendered for plaintiffs, appellees here, for $11,534, from which the defendants have prosecuted this appeal.

In view of the conclusion reached, we deem it unnecessary to enumerate the various parties sued as defendants and the bases upon which liability against them for Jordan's acts is sought to be established. Nor is it necessary to discuss all the issues presented on the appeal, since we have concluded that the one question hereinafter discussed disposes of the case.

At the place of the accident, a few miles from San Marcos, the highway runs approximately north and south and is straight, with a slight downhill grade to the south. The plaintiff and her husband operated a farm and dairy, and their residence was about 100 feet east of the highway opposite the point where the collision occurred. On the morning in question, Mrs. Goodnight had crossed the highway from her home, and from the west side thereof had signaled to and stopped one of the regular south-bound passenber busses of the Greyhound line, operating between Austin and San Antonio, for the purpose of taking passage thereon en route to Falfurrias. The bus had pulled up alongside on the right or western side of the highway, had stopped to take her on board, and the driver had opened the door of the bus, on its right-hand side, for that purpose. We copy from the plaintiffs' petition her allegations, which were sustained by the proof,

as to what transpired at this point: "As the plaintiff, Mrs. Goodnight, was in the act of boarding said bus, and had either actually gone thereupon, or was in the act of so doing, it developed that she had inadvertently left her purse, with necessary traveling funds therein, at her home immediately adjacent to and just across and on the opposite side of that half of the road whereon said bus had stopped to take her aboard, and she thereupon undertook to run hurriedly into and across said road, or a portion thereof, toward her home, to get said purse, at same time calling to her little daughter, or some other member of her family, to bring same to her (which her said daughter instantly proceeded to do), and, as said Mrs. Goodnight undertook, under the circumstances here shown, to get such purse, she hurriedly passed from the right or most western side of the front end or portion of said bus around the front end thereof, and, just as she emerged, or was in the act of emerging, from in front of said bus, and was in the act of crossing, or starting to cross, that road, going toward her home for such purpose, and toward her daughter, who was bringing such purse to her, she was struck by an automobile, operated, controlled and driven by the defendant Jordan, and, as a result, she received the injuries herein alleged and complained of."

She further alleged, which allegations were also substantially sustained by the proof, that: "Said bus was as much as, or more than, eight feet wide at the rear and center thereof, but at the front it was sloped or drawn in on each side; that a person passing in front thereof, on the ground, as Mrs. Goodnight then did, could not see a car approaching from the rear of the bus unless and until she had passed, not only the front end of said bus, but also the line of the wider center and rear portion thereof; and, when said Mrs. Goodnight did, as herein alleged, start to meet her child coming with the purse, she could not, and did not, reach a point where she could see the Jordan car until she had cleared, by some two or three feet, the front portion of said bus; and, just as she so cleared the same and had taken, perhaps, one additional step, she was suddenly struck and run down by the defendant Jordan's car."

The defendant Jordan, driving his own car, had been running behind and in sight of said bus for several miles, saw the plaintiff standing on the right or west side of the highway, saw the bus stop and the door open to take her on board, and saw her start to embark thereon. He thereupon turned to the left and undertook to pass said bus on its left or east side, and when alongside same saw plaintiff emerge hurriedly into the road around in front of the bus, but was too near her to avoid the collision. There were some discrepancies and inconsistencies in the testimony as to how far Jordan was from the rear end of the bus when he turned to the left to pass it, but we think they are of no consequence. The highway was wet, due to recent rainfall, and, though there is some controversy as to rate of speed of Jordan's car, no issue is made but that he was traveling within the statutory speed limits, and that he turned to the left far enough back from the rear of the bus to pass same without risk of collision with the bus itself.

The jury found Jordan guilty of negligence in all of the several separate respects charged, and that each of said acts of negligence was a proximate cause of the injuries sustained. While the findings in some respects are, we think, without evidence to support them, the evidence was sufficient to sustain other findings and to support the judgment, absent contributory negligence on the part of plaintiff; and we pretermit a discussion of the issues of defendant Jordan's negligence. We have reached our conclusions herein on the postulate that Jordan was guilty of negligence.

█ Deplorable as the collision was, with its dire results and tragic consequences, we think the conclusion is inescapable, under all the facts and circumstances, that plaintiff was guilty of contributory negligence as a matter of law.

The injuries to the unfortunate woman destroyed her memory as to anything that occurred at that time. Neither the husband nor her little girl, who had gone for her purse, saw the actual collision. The driver of the bus, after he had opened the door for her to enter the bus, and had consented to wait for her to get her purse, was otherwise occupied, and did not see the collision. Only a passenger on the bus, who was seated immediately behind the driver on the left side of the bus, saw all the acts of plaintiff immediately preceding the collision. The witness testified with respect thereto as follows:

"A. Well, the lady was standing on the right side of the road with her bag in her hand, and she waved the bus down and she approached the door to get on the bus, and just before she got to the door, she said, 'Oh, I forgot my purse', and instantly turned;

afterward she hollered to somebody in the house 'my purse, my purse', and started running across in front of the bus to the house, and she ran directly in the path of this approaching car.

"Q. Where did she run? A. Directly in the path of this approaching car, and the car struck her.

"Q. What part of the car struck her? A. The right side of the car struck her—I couldn't tell exactly where she was—she hit on the right side of the hood and fender, and knocked directly down the road; and the instant the car struck the lady, or maybe before I couldn't say, the driver of the car turned to the left, and headed towards the corner of the fence there, and skidded; he applied his brakes, I could tell by the sound, and afterwards by the tracks, and after the car swerved around this way and knocked down two or probably three posts and the car came to a stop, and the woman lay right in the middle of the left hand side of the road, maybe a little over half way between the bus and the fence."

"Q. After this lady called for her purse and she started across the front end of the bus, was she going fast or slow? A. She was moving fast.

"Q. Do you know about how fast she was going from the bus, from the left hand side of the bus before the car struck her? A. I cannot say exactly—between four or seven feet, something like that.

"Q. Did you ever see her look up and down the road? A. No sir, she may have been aware just when it struck her, but not before that; she was already in the position when she was struck.

"Q. Did she look up at any time until the car was right on her? A. No sir, I didn't see her; she was facing the house.

"Q. Did the lady have on a hat? A. I believe she did."

Jordan testified that, just as his car drew alongside the center of the left side of the bus, plaintiff ran from in front of the bus into the highway directly in front of his car; that he immediately applied his brakes and turned to the left, but that it was impossible to avoid striking her; that she wore a hat, was looking down directly in front of her; and that she neither stopped in front of the bus nor looked to either side. He also testified that, had she stopped before running into the center of the highway, he would not have struck her; and that, had she looked, she could have seen his car approaching. The jury found in answer to special issues submitted that plaintiff "failed to pause as she was in the act of emerging from the front end of the bus into the road, just prior to the time she was struck by the Jordan car"; and that just as Jordan's car was passing the bus she "ran out immediately in front of said bus, directly in front of the car driven by Jordan, and so close to said automobile that it was impossible for Jordan to stop same or to avoid striking her." They also found that neither of these acts constituted negligence on her part under the circumstances. In brief, the findings of the jury and the uncontroverted evidence clearly show that, in her excitement and confusion over forgetting her purse, she ran out into the highway from behind the bus as to Jordan, who had every reason to believe that she had boarded it, without faltering, stopping, or looking to ascertain any impending danger from passing traffic, and took no precautions whatever for her own safety.

The case has been ably briefed by both parties and numerous cases cited, for the most part railroad and interurban crossing cases. We have carefully examined all of these cases, and in addition have made an extended research of the authorities of the various states relating to automobile accidents. The cases are legion. But we deem it unnecessary to undertake a review of them here.

The general rules as to negligence and contributory negligence have been repeatedly announced. Negligence vel non ordinarily depends upon the facts and circumstances of the particular case; and for a plaintiff to be deemed guilty of contributory negligence as a matter of law, the facts and circumstances must be such in the particular case that reasonable minds could not, in the opinion of the court, differ on that issue. The duty of motorists and of pedestrians on the streets and highways to use due care in the interests of safety is reciprocal, and the quantum of care to meet the requirements of the law in this regard is referable to the place and conditions under which it is called in question. On the streets of cities where pedestrians are numerous and crossings constant, essentially greater precautions are required for safety of pedestrians. To that end speed limits for motorists are reduced, safety zones provided, traffic police, stop signals, semaphores, and intermittently changing lights are frequently in operation. Pedestrians are usually required to cross streets at designated places. But where that is not done, the courts have uniformly held that a pedestrian crossing in the middle of a block is charged with a greater amount of care for

his own safety against injury from motor traffic than when crossing at a street intersection or other designated place. Most of the adjudicated cases have arisen on city streets. But the uniform rule seems to be that the vigilance required of a pedestrian in crossing a street or highway must be proportionate to and commensurate with the dangers involved.

The collision in the instant case occurred on a cardinal highway of the state in a rural area at a point where it was straight. There was no crossroad, nor place where pedestrians usually crossed. Cars passed this point frequently and at a rapid rate of speed. These facts were admittedly known to plaintiff whose residence was only about 100 feet away. It was her duty under the law to exercise care for her own safety in attempting to cross it commensurate with the known dangers. And where a pedestrian before attempting to cross does any act or takes any precaution looking to his own safety, whether that be sufficient to exonerate him of negligence is a question for the jury. But where he rushes into a highway, where traffic is frequent and at an unusual place for crossing, without doing anything for his own safety, the courts have uniformly held, so far as we have been able to find, that such conduct constitutes negligence as a matter of law. Such is the holding in I. & G. N. v. Edwards, 100 Tex. 22, 93 S. W. 106, and by the Courts of Michigan, Wisconsin, New York, Massachusetts, Pennsylvania, Rhode Island, Kentucky, Washington, and numerous other states. Without citing the particular cases, we refer to numerous and extensive annotations on this question contained in 14 A. L. R. 1176; 65 A. L. R. 207; 79 A. L. R. 1074 to 1095. In the latter citation numerous recent automobile collision cases from many states are reviewed.

But plaintiff seeks to excuse her failure to look because the bus obstructed her view in the direction from which Jordan approached. On the contrary, because of the risk to her own safety involved in hurrying into the highway from behind such obstruction, we think it increased her duty to take proper precautions because of that fact. See annotations in 79 A. L. R. 1094. This condition is clearly distinguishable from obstructions, permanent in nature, to views at railroad crossings in cases cited by appellees. In these cases the obstructions usually existed at the instance of, or with the acquiescence of, the railroad itself, against whom the injuries were claimed. In the instant case, the obstruction of which plaintiff complains was created by her own act in stopping the bus at this point, a matter for which Jordan who injured her was in no way responsible.

Appellee also urges, as excusing her failure to take any precaution for her own safety, the fact that her mind was diverted because of having forgotten her purse. This contention is based upon that line of railroad cases holding that, where the injured party's attention was diverted from the danger of crossing by a third party or by some extraneous incident or circumstance, the issue of contributory negligence should go to the jury. But such rule cannot, we think, be extended to a case where the injured party is himself entirely responsible for the fact or circumstance which caused his own distraction or diversion of mind. Where a party goes into a dangerous position without looking out for his own safety while engrossed in thought, concentrating his mind on his own affairs, reading a newspaper, or other similar mental occupation, it may be said that his mind is diverted from his duty to maintain a proper lookout. But it cannot be said that such diversion, for which he alone is responsible, should excuse him for walking into danger. Doubtless in the instant case Mrs. Goodnight was perturbed and distracted upon the sudden discovery that she had forgotten her purse, but such lapsus mentis was a matter entirely attributable to her, in nature a negligent act in itself, and cannot, we think, in reason mitigate her subsequent negligent act in hurrying without precaution into a place of danger because of that fact.

Appellee urges, as analogous on the duty to stop, look, and listen, the decisions of the Supreme Court that failure to do so at railroad crossings is not negligence as a matter of law. This rule is well settled in Texas. Kirksey v. Traction Co., 110 Tex. 190, 217 S. W. 139; Trochta v. Ry. Co. (Tex. Com. App.) 218 S. W. 1038; T. & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; G., H. & S. A. Ry. Co. v. Wells, 121 Tex. 310, 50 S.W.(2d) 247, 251. Some of the earlier cases in other states involving automobile injuries to pedestrians in crossing highways have held that a lesser duty rests upon a pedestrian crossing a highway to keep a lookout for his own safety than one crossing at a railroad crossing. But, as stated in Mertens v. Lake Shore Yellow Cab & Transfer Co., 195 Wis. 646, 218 N. W. 85, these views were expressed at a time when automobiles were not greatly in public favor, were not

in frequent use, and before the days of modern highways and rapid transportation thereon. It is now a matter of common knowledge that cardinal highways of the state are designed and constructed primarily for rapid transit thereon by motorcars; and that this character of vehicle has come to be the universal and almost exclusive means of transportation over such highways. On railway lines the passage of trains is usually at fixed intervals, not very frequent, and their approach to crossings accompanied with statutory signals, and warnings by noise inherent in their movement calculated to give warning of their approach to one in possession of all of his senses, whether he stops to look and listen for their approach or not. Modern transportation over the highways by automobile has created an entirely different condition which renders the decisions governing railroad crossings of little value. On the highways, the passage of automobiles is swift, with little noise, frequent, and moving simultaneously in both directions. Where highways cross, or places for pedestrians to cross occur, warnings are usually provided in conspicuous view to the motorist. But elsewhere, as where plaintiff was injured, the dangers to a pedestrian crossing a much-used highway at an unusual place therefor, without precaution on his part, the hazards to his own safety are imminent, obvious, and commonly known. The law requires him, therefore, to maintain a vigilance in so doing commensurate with such known dangers. And without further discussion of the issue, we have been forced to the inescapable conclusion that, under all the facts and circumstances of this case, regrettable and tragic though the consequences proved to be, Mrs. Goodnight was guilty of contributory negligence as a matter of law.

While appellees' attorneys insist that there were circumstances and testimony from which the jury could have concluded that Mrs. Goodnight did look in the direction of the approaching car before she was struck, we think it conclusively appears that, if she did so, it was almost at the very instant of impact when the car was but a few feet away, and at a time when it was obviously too late to avoid any danger to which she had already subjected herself; and too late to enable Jordan to avoid striking her. Such in effect was the finding of the jury and the only conclusion which can, we think, be deduced from the evidence.

This conclusion renders unnecessary a discussion of the other issues presented. The judgment of the trial court will therefore be reversed, and judgment here rendered for appellants.

Reversed and rendered.

## On Motion for Rehearing.

 In support of the motion for rehearing, appellees' attorneys have filed a very able argument with an exhaustive digest and review of the decisions in support of their contentions. The first of these is that Mrs. Goodnight is entitled to the legal presumption that she did, under the circumstances, exercise due care for her own safety and look for on-coming automobiles; and that the jury were entitled to weigh such presumption against evidence to the contrary. We agree with counsel that because Mrs. Goodnight was, by the accident, bereft of all memory as to what occurred, she is entitled to the same presumptions in her favor that would have obtained had she lost her life. The rule that one is presumed to have used ordinary care for his own protection against injury is of universal recognition and inures to the benefit of the injured party on the issue of contributory negligence, unless the evidence shows the contrary. And the cases cited by appellees go no further, we think, than to hold that, in the face of such settled presumption of due care, and that the deceased stopped, looked, and listened before going into a place of danger, if there be any interim wherein the witness failed to see the deceased just prior to the injury, the presumption then becomes available. Or, if the evidence on the issue of failure of the deceased to look be uncertain, equivocal, or conflicting, or comes from interested witnesses, the jury may weigh such presumption against it in support of the verdict.

 But such presumption does not obtain as against direct and positive testimony of an eyewitness as to what actually occurred. Because of appellees' earnest insistence on this issue, we have again carefully reread the entire testimony of the witness Hector. While he did not recollect with accuracy every detail as to what transpired between the time the bus stopped and the collision occurred, it is clear, we think, that he saw Mrs. Goodnight at all times from the instant she discovered the loss of her purse, until she was struck by Jordan's car. Though he testified on cross-examination that she did look back towards Kyle before she was struck, she did so only when the car was immediately upon her, and too late to escape injury, and the jury in effect so found. He was a disinterested witness, and his testimony

was positive that she did not look out for her own safety as she ran into the highway around the front end of the bus. Under this state of the evidence we think the presumption insisted upon by appellees was overthrown.

The other contentions made were given careful consideration in our original opinion, and a further discussion of them here would add nothing to the views already expressed. Appellees' motion is therefore overruled.

Overruled.