[No. 27622. Department Two. January 22, 1940.]

EMMA T. KUHNHAUSEN, *Appellant,* v. H. O. WOODBECK *et al., Respondents.*[1]

[1]Reported in 97 P. (2d) 1099.

*Hall & La Londe (Wilbur Beckett, Howell & Oppenheimer,* and *Robert T. Mautz,* of counsel), for appellant.

*Schaefer & Hall,* for respondents.

BEALS, J.—St. Johns avenue, in the city of Vancouver, Washington, runs in a general northeasterly and southwesterly direction. V street runs north and south, and intersects St. Johns avenue from the south, at an angle, but does not cross it. The center twenty feet of St. Johns avenue has a black top surface, the rest of that roadway and all of V street being graveled and oiled, the graveled portion of St. Johns avenue being used by traffic. St. Johns avenue, to the west of the intersection, runs, for some distance, northeast and southwest. At the point of intersection, it curves towards the north. The westerly margin of the used portion of V street, as shown on the plan of the intersection admitted in evidence, is practically straight, while the easterly margin curves northeasterly, fanning out to a considerable extent. It clearly appears from the evidence that while, of course, the southerly margin of the paved portion of St. Johns avenue is clearly defined, the southerly boundary of the portion of the street used for vehicular traffic is not clearly defined. The street is approximately sixty feet in width. On the east side of V street is a graveled pathway for the use of pedestrians.

January 15, 1938, the plaintiff, Emma T. Kuhnhausen, was walking north along V street towards her home, and arrived at the street intersection at approximately five o'clock in the afternoon. It was cloudy and some rain had fallen. It was twilight, and most of the automobile lights were shining. When plaintiff reached the intersection, she looked in both directions along St. Johns avenue, and paused to per-

mit some automobiles to pass. She then proceeded to cross the street, following, in a general way, the pedestrian path extended across the graveled portion of St. Johns avenue. She reached the paved portion of the highway, and when she had made some progress across the pavement, she was struck by the right front fender of an automobile owned by defendant H. O. Woodbeck, driven by his daughter, Barbara Woodbeck, which was traveling east on St. Johns avenue, its headlights shining. Plaintiff suffered severe injuries, for which she sought compensation in this action.

In her complaint, plaintiff alleged that defendant Barbara Woodbeck had been negligent, and defendants in their answer denied negligence and pleaded contributory negligence on plaintiff's part.

After a trial before the court sitting with a jury, a verdict was returned for the defendants, the jury noting upon the verdict that they had found that both parties had been equally guilty of negligence. From a judgment of dismissal entered upon the verdict, plaintiff has appealed.

Error is assigned upon the giving of an instruction to which appellant excepted, the instruction reading as follows:

"You are instructed that the law requires the plaintiff Mrs. Kühnhausen, to exercise reasonable care in the use of the streets. It was the duty of Mrs. Kuhnhausen to look for vehicles before entering upon the paved portion of St. Johns avenue to cross it, and if you find from the evidence that Mrs. Kuhnhausen did not look to the right or left after she left the graveled path and entered upon the highway, then she is guilty of negligence; and if you also find that such negligence was the sole or a contributing proximate cause of the injuries she suffered, your verdict must be for the defendants."

Appellant argues that the jury should have been instructed merely that it was appellant's duty to exer-

cise that degree of care and caution in observing approaching traffic along St. Johns avenue which should have been exercised by the ordinarily careful and prudent person, under the same or similar circumstances. Appellant argues that the trial court peremptorily instructed the jury, as matter of law, "just when and how and from where it was incumbent upon the appellant to do her looking preliminary to crossing this public highway, and after entering upon the same;" arguing that the instruction was erroneous, in that it placed a greater burden upon appellant than the law requires of a pedestrian crossing a highway at a recognized street crossing.

It appears that, at the conclusion of the case, the trial court instructed the jury, and after a short recess, the arguments were commenced. At the close of the argument presented by respondents' counsel, the court again declared a recess, and when the court again convened, and before appellant's counsel commenced his closing argument, the court stated to the jury that he wished to modify instruction No. 10, which had theretofore been given, and without further explanation, read to the jury the instruction above quoted.

If the instruction as finally given was correct, it cannot be held that the court erred in the time or manner of reading it to the jury.

No error is assigned upon the giving of any instruction other than instruction No. 10, above set forth, and no error is urged here upon the refusal of the trial court to give any requested instruction.

The court clearly defined negligence to the jury, as well as contributory negligence. The court further instructed the jury that the duty did not rest upon appellant to exercise continuous observation to discover the approach of respondents' automobile, or to avoid a collision therewith, but that appellant was

required only to exercise the care of an ordinarily prudent person, under the circumstances, taking into consideration her opportunity, or lack of opportunity, to receive warning of the approach of a car. The jury were instructed that appellant had the right to assume, until she had some notice to the contrary, that respondents' automobile would be operated at a lawful and reasonable rate of speed, would be under proper control, and that the driver would be maintaining adequate observation, and that, if appellant was on a pedestrian crossing (such crossing being elsewhere defined in the instructions), the automobile would yield to her the right of way. Continuing this instruction, the jury were told that the driver of the automobile had the right to assume, in the absence of notice to the contrary, that appellant would exercise that degree of care and caution that a reasonably prudent person would exercise, under the circumstances. The jury were further told to consider the instructions as a whole, and that each and every instruction should be considered in connection with all the other instructions given.

By the instruction of which appellant complains, the jury were not told that it was appellant's duty to look for approaching traffic exactly from the margin of the paved portion of St. Johns avenue, but that it was her duty to make such observation before entering upon the paved portion of the highway. Under the instruction, an observation made by appellant from some point south of the margin of the pavement would have complied with the duty which rested upon her, as defined by the instruction given by the court. The gist of the instruction is found in the latter portion thereof, in which the jury were told that, if they should find from the evidence that appellant looked neither to the right nor the left after she left the graveled path and entered

upon the highway, she was guilty of negligence; and if the jury should also find that such negligence was the sole or a contributing proximate cause of the injuries which appellant suffered, the jury should find for respondents. As above observed, the jury were told that it was not appellant's duty to exercise continuous observation. While the exact end of the graveled pedestrian path was not clearly marked or defined, the jury must have understood that the path extended no further than the margin of the highway. It appears from the evidence that appellant, upon reaching the southerly margin of St. Johns avenue, did not turn a little to her left and attempt to cross St. Johns avenue at a right angle, but that she continued on in the general direction of the pedestrian path produced, which, on account of the angle of the intersection and the curve of St. Johns avenue to the north, made a longer crossing.

Concerning the accident, appellant testified:

"Q. As you came along the pathway, headed north, what did you do? A. I looked if there were some cars in sight. I couldn't see nothing. That is all I remember. Q. You do not remember anything after that? A. No."

On cross-examination, she stated:

"Q. . . . Could you point out on this map, Mrs. Kuhnhausen, just where you were when you looked for the cars? A. I were on the gravel pathway, and I looked for cars; I couldn't see nothing. Two cars passed me, and I looked and seen nothing, and then I don't remember nothing else. . . . Q. This is the graveled path here (indicating). A. Yes. Q. And this is out here in the street, is it not? (indicating) A. I wouldn't say because I don't know—I went to the end of the gravel path. Q. You went to the end of the graveled path here (indicating)? A. Yes. Q. And then, before you stepped out into the street, you looked to the right and left? A. Right and left. . . .

Q. As you got down to the path, before you stepped into the street— A. —I looked both sides. Q. You looked in both directions? A. Yes. Q. And you did not see anybody? A. No. Q. Then, you walked on? A. I don't remember nothing. That is just when I don't remember nothing. . . . Q. This is the way you came down, this way, from that side? A. I were on the east side, on the gravel path. I walked to the end of the gravel path. That is all I can say. . . . Q. You looked no more after you reached the end of the graveled path? A. Well, I tell you. I were in the gravel path and that is all I remember."

She repeated, on cross-examination, that, before she stepped into the street, she looked to the right and left, but that she could not describe her exact course across St. Johns avenue. Appellant several times reiterated that she looked both ways for cars; that two cars passed her; and that she then proceeded to cross the avenue, and remembered nothing else.

As observed by the trial court in its memorandum opinion filed after argument upon appellant's motion for a new trial, the graveled path is indicated, and its northerly end plainly marked, on the map of the intersection which was in evidence, this point, as indicated by the evidence, being approximately thirty feet from the southerly margin of the paved portion of St. Johns avenue along the line traveled by appellant, as she and other witnesses testified. Appellant was thoroughly familiar with the street intersection, testifying that she had crossed it hundreds of times. The map which was introduced in evidence was used in connection with appellant's testimony, and the trial court and the jury must have had a great deal better understanding of the testimony than we can obtain from reading the record, as counsel and the witness, while referring to the map, pointed out appellant's position, evidently, as appears from the record, indi-

cating, by the use of the map, her position on the ground, but these positions not having been indicated upon the exhibit, it is impossible properly to obtain from the record a clear understanding of the testimony.

Under instructions of the court, the jury viewed the scene of the accident prior to the taking of testimony.

At the time of the accident, appellant was a large, heavy woman, sixty-five years of age; undoubtedly she was not a rapid walker. Manifestly, while traffic on St. Johns avenue might have been using a portion of the graveled surface of the street, most of such traffic would be upon the paved portion of the highway.

Certainly, it was appellant's duty to look for approaching traffic before entering upon the paved portion of the avenue. The question is: Can it be held that the trial court placed too heavy a burden upon appellant, by instructing the jury that, if they found that appellant looked neither to the right nor the left after she left the graveled path and entered upon the highway, she was guilty of contributory negligence?

It must be remembered that we are not here concerned with the question of whether or not the refusal of the trial court to give instruction No. 10, if requested, would have been reversible error, the question before us being whether or not, considering the instructions as a whole, and in the light of the evidence, the judgment entered upon the verdict of the jury must be reversed because the court did give the instruction.

Appellant's counsel cite several authorities, which we shall now discuss, in support of their argument. In the case of *Hiteshue v. Robinson*, 170 Wash. 272, 16 P. (2d) 610, it appeared that Mrs. Hiteshue, while walking across an intersection, was struck by an automobile. We affirmed a judgment entered upon the verdict of a jury in favor of the plaintiff. The accident

occurred a few minutes after eight o'clock on a September evening. There was testimony to the effect that the automobile was traveling without lights and was proceeding at approximately thirty-five miles per hour. A question for the jury was presented, and the judgment was properly affirmed.

In the case of *Davis v. Riegel,* 182 Wash. 1, 44 P. (2d) 771, we held that the trial court had erred in granting judgment notwithstanding the verdict the jury returned in favor of the plaintiff, a pedestrian, who was struck by an automobile at a street intersection, affirming, however, the order of the trial court granting a new trial. The plaintiff was proceeding south on the east side of a north and south street. The automobile, which the jury found struck her, was proceeding north on the same street, and upon reaching the intersection, turned to the east, striking the plaintiff. As stated by this court, had the pedestrian

". . . seen the automobile 150 feet away when she started across the intersection, there would have been nothing to indicate to her that it was going to change its course and swing around the corner over the crossing upon which she was proceeding."

The case is not controlling here.

In the case of *Ahrens v. Anderson,* 186 Wash. 182, 57 P. (2d) 410, an order of the superior court granting a new trial after the rendition of a verdict in favor of the defendant, in an action for personal injuries sustained by a pedestrian who had been struck by an automobile, was affirmed. The granting of a new trial is, of course, largely discretionary with the trial court, and it was held that no abuse of discretion appeared. This court simply noted the general rule that the question of contributory negligence on the part of a pedestrian who is injured at a street inter-

section is ordinarily a question of fact for the jury, and that the case then before the court presented such a question.

Appellant relies upon several authorities from other jurisdictions. In the cases of *Reier v. Hart*, 202 Minn. 154, 277 N. W. 405, and *Long v. Barbieri*, 120 Cal. App. 207, 7 P. (2d) 1082, it appeared that the driver of an automobile made a sudden turn, injuring a pedestrian. In the latter case, it was held that an instruction that the pedestrian was required to look toward the direction from which danger was anticipated, and that this duty was a continuing one, was erroneous. The facts of each case differ from the facts in the case at bar, and the cases are not directly in point here.

In the case of *Psimenos v. Huntley*, 47 S. W. (2d) (Tex. Civ. App.) 622, the court of civil appeals of Texas held that an instruction defining what constituted a proper observation by a pedestrian while crossing a street was erroneous, for the reason that the law does not prescribe the particular acts which constitute a proper lookout, that depending upon the circumstances. The case is not here in point, as the instruction of which appellant complains did not undertake to definitely define a proper observation, but simply told the jury that it was appellant's duty to look for approaching traffic, and that if she did not look in either direction after she left the graveled path and entered upon the highway, she was guilty of negligence. The instruction did not place upon appellant the burden of continuous observation, and indeed, the court instructed the jury that this burden did not rest upon her.

Other authorities are cited by appellant, to the effect that the law fixes no hard and fast rule governing the conduct of pedestrians in crossing a city street, the law

simply requiring that the pedestrian shall use that degree of care and caution for his own safety which an ordinarily prudent person would use, under like conditions and circumstances.

The instruction complained of opens with the declaration that the law required appellant to exercise reasonable care in the use of the streets. While the remainder of the instruction might have been appropriately couched in more general language, it does not necessarily follow that the instruction constitutes reversible error.

The trial court relied upon the case of *Moseley v. Mills,* 145 Wash. 253, 259 Pac. 715, which was an action by a pedestrian seeking to recover damages for injuries resulting from being struck by a motor stage. The plaintiff recovered judgment in the superior court, and on appeal by defendant, the judgment was reversed. From the opinion, it appears that the plaintiff approached from the east the north and south street which she desired to cross, the street being forty-one feet wide, only the westerly seventeen feet thereof being paved. From the easterly margin of the street, she looked in both directions, noticing only a motor vehicle to the north at a distance of about a block or a little more. She then proceeded across the street, without making any further observation. When she reached a point about two steps from the westerly curb, she was struck by the stage, which she testified had sounded no warning. The defendant contended, on appeal, that from the record it should be held that the plaintiff was guilty of contributory negligence in failing to look for traffic before entering upon the paved portion of the street, while the plaintiff contended that, having looked from the easterly margin of the street, she had done all that the law

required of her. This court held that, under the conditions shown, the point of entering the street crossing was not at the easterly boundary of the unpaved portion of the street, "unused as it was for traffic," and that in entering upon the paved strip, knowing that an automobile was approaching, and without further observation, plaintiff was guilty of contributory negligence as matter of law. In the course of the opinion, we said:

"We do not hold that the pedestrian must look at the precise moment when stepping from the curb, but that the look must be taken at such a time and place as would reasonably be of some benefit in protecting the pedestrian and giving knowledge of the condition of the traffic. In the present case, it would take the respondent one-third longer to traverse the unpaved portion than it would the paved, assuming that the same rate of speed was maintained. We think it clear that this was negligence which contributed to the injury."

The case is in point here, in so far as it held that the burden rested upon the pedestrian to look for approaching traffic before entering upon the paved portion of the highway upon which vehicular traffic would reasonably be anticipated. In the case at bar, it does not appear that appellant saw respondents' automobile approaching even at a distance, and in that particular the *Moseley* case differs from the case at bar. It also differs in that the graveled portion of St. Johns avenue might have been used by automobiles.

Certainly, it was appellant's duty to look for approaching traffic before entering upon the paved portion of St. Johns avenue, and it is equally certain that, if appellant looked neither to the right nor left after she left the graveled path and entered upon the highway, it must be held as matter of law that she was negligent. The end of the graveled path along V street

was some distance from the margin of St. Johns avenue, and was not a place from which a pedestrian about to cross the avenue could safely make a final observation upon which to rely, without again looking to the right and left.

While a concrete instruction as to negligence should seldom be given, it has been held that, under certain circumstances, such an instruction is not only proper, but that it constitutes reversible error not to give it. *Van Cello v. Clark*, 157 Wash. 321, 289 Pac. 19.

Upon the record before us, the instruction complained of must be considered in connection with all the other instructions which the court gave. We conclude that, in view of the evidence and the instructions, considered as a whole, the instruction complained of does not constitute reversible error.

The judgment appealed from is affirmed.

STEINERT, JEFFERS, and GERAGHTY, JJ., concur.

BLAKE, C. J. (dissenting)—Upon the facts of the case, the instruction complained of was the equivalent of a directed verdict for the defendants. Plaintiff was crossing at an intersection on a course approximating the sidewalk area extended. She looked before starting across and saw no vehicle approaching.

This court has repeatedly held, upon similar facts, that it is for the jury—not the court—to say whether an injured person is guilty of contributory negligence in proceeding without looking again. *Hillebrant v. Manz*, 71 Wash. 250, 128 Pac. 892; *Chase v. Seattle Taxicab & Transfer Co.*, 78 Wash. 537, 139 Pac. 499; *Redick v. Peterson*, 99 Wash. 368, 169 Pac. 804; *Olsen v. Peerless Laundry*, 111 Wash. 660, 191 Pac. 756; *Hiteshue v. Robinson*, 170 Wash. 272, 16 P. (2d) 610. In these decisions, it is expressly asserted that, if a pedestrian looks before starting across a street at an intersection,

he is not bound *as a matter of law to look again* if he sees nothing in the way of vehicular traffic to threaten his safety in crossing.

I dissent.

