## DALES v. THOMPSON.

### No. 11134.

Court of Civil Appeals of Texas. San Antonio.

April 1, 1942.

Gordon Griffin, of McAllen, and W. H. Gossage, of San Juan, for appellant.

Strickland, Ewers & Wilkins, of Mission, E. H. Crenshaw, Jr., of Kingsville, and Greer & Cox, of McAllen, for appellee.

SMITH, Chief Justice.

The suit involves a railroad crossing accident in which James S. Dales lost his life. He was fifty-eight years of age.

The accident occurred at the intersection of Nebraska Street and the railroad track in the heart of the town of San Juan, in Hidalgo County, which has a population of 2,264.

Dales drove his automobile onto the railroad track and an incoming westbound passenger train struck his car, which was impaled onto the engine and pushed several hundred feet along the track before the engine was brought to a stop.

The train was moving at a rate of thirty or thirty-five miles per hour, and the car at the rate of five miles per hour as they approached and reached the place of the impact. Apparently neither the car nor the train was slowed down for the crossing.

The collision occurred at 8:30 o'clock of a clear morning in May.

The street and railroad were level and straight for some distance in all directions from the crossing and there was nothing to obscure the view of the car or train as each approached and moved into the intersection.

It is perfectly obvious from the record that neither Dales nor the engine crew was aware of the approach of the other. The meager evidence upon the point indicates that the engine men did not know of the collision until the train was stopped, while on the other hand it is not possible to conceive that Dales saw the train before the collision, since it appears certain that he made no effort to avert it.

The railroad runs through the center of San Juan from east to west. Its right-of-way is paralleled by Federal Highway 281, the main artery of travel through the Lower Rio Grande Valley. The two rights-of-way adjoin each other, the highway on the south, the railroad on the north.

Nebraska Street runs through the center of the town from north to south. The street is paved and is a part of a highway extending north and south through San Juan; it bears most of the north and south traffic through the town, and this traffic is

heavy, particularly around 8:30 in the morning, the time of this accident.

It appears that on this morning Dales, with his car windows closed, traveled west on the highway, which paralleled the railroad, then turned north on Nebraska Street, to cross the adjacent railroad tracks. As he got within thirty or forty feet of the railroad crossing he passed a truck, which, traveling ahead of him, had stopped there to await the passing of the approaching train.

The railroad had no flagman, gate, or other modern device for warning travelers of the approach of trains at this crossing, except, presumably, the familiar cross-bar sign. Plaintiff alleged that the crossing was of such unusually hazardous nature as to require some such device, and that the omission was negligence and the proximate cause of the accident. Plaintiff also alleged that the engineer failed to sound the train whistle at eighty rods from the crossing, and failed to continuously ring the engine bell before reaching the crossing, both these protections being required by statute; that the train was moving at an excessive speed and the trainmen failed to keep a proper lookout; that these acts and failures were negligent and each was a proximate cause of the accident. Discovered peril is not in the case, nor is unavoidable accident.

The record seems to be silent as to the ringing of the bell, except that one or more witnesses testified that they heard no bell. Other witnesses testified, without contradiction, however, that the whistle was sounded within indefinite distances of the crossing, the necessary inference from one or more witnesses being that it was sounded within a block of the crossing. In any event it was conclusively shown that the whistle was sounded several times before the crossing was reached. Different witnesses, at varying distances from the scene of the accident—one of them 350 or 400 feet beyond the crossing—knew the train was approaching the crossing.

The driver of the truck ahead of Dales knew the train was approaching when he turned into Nebraska Street, then heard the whistle, and stopped his truck when he got within twenty or forty feet of the crossing, to let the train pass before him. Dales, however, drove right on past the awaiting truck, and then on toward and upon the track at the almost unbelievable speed of not exceeding five miles per hour.

The only testimony on the point fixed five miles as the maximum, and plaintiff stresses and insists upon that fact upon this appeal. The foregoing facts seem to have been conclusively established by uncontradicted testimony, and we believe we have stated them fairly and in the light most favorable to plaintiff. All the testimony came from plaintiff's witnesses, since defendant put none on.

Upon those facts the trial judge directed a verdict in favor of the trustee for the railroad company and Mrs. Dales, the widow of the decedent, who brought the suit for damages for the death of her husband, has appealed. She will be designated as plaintiff and the trustee of the railroad as defendant.

We are of the opinion that the trial judge properly directed a verdict for defendant. We may assume for the purpose of this decision that had the case gone to them the jury would have been authorized to convict defendant of one or more acts of negligence, and that each such act was a proximate cause of the deplorable tragedy.

But, in view of the record, it seems obvious that the decedent was himself guilty of negligence which, as a matter of law, was the proximate cause of his death. For the fact is inescapable that by the exercise of even the slightest degree of care he could have avoided the collision. He had been a resident of the vicinity for seven years, and in the very nature of the case must have been familiar with the lay of the land. But had he been a complete stranger to the situation, there still remains no rational explanation of his conduct consistent with the use of any care upon his part. Although there was no watchman or gate, or other modern warning device at the crossing, the decedent was confronted with too many other warnings for all of them to be disregarded: There lay before him the railroad tracks, first, a switch track and then the main-line track; the train was approaching, with its whistle sounding at intervals, with its inevitable rattling over rail joints and the familiar roar and rumbling always incident to a moving train; the truck ahead of him waiting to let the train by. Being a normal person, in "perfect health," with eyes to see and ears to hear, he was bound, had he used any degree of care, to realize the very danger which so soon destroyed him. But through some strange and fatal lapse of care he

158

drove around or past the awaiting truck, without pause, and over the intervening twenty to forty feet, at not exceeding five miles per hour, onto the tracks immediately in the path of the oncoming train.

There is no contention that the decedent was not in possession of good health and strength and all the normal senses incident thereto. There is no contention that his car and its brakes were not in good condition. There is no contention—the record negatives—that there was anything to distract his attention from the tracks ahead of him, or from the clear view of the approaching train. There is no contention—it would be in the face of common knowledge to say—that under the conditions he could not have brought his car to a full stop almost instantly by applying its brakes; had he done so his car would have stopped short of the tracks. The only rational conclusion possible from this state of facts is that the decedent did not realize the approach of the train, and the only possible conclusion deducible from this lack of realization is that he exercised no care for his own safety in an obviously dangerous situation. And this lack of care was, in the very nature of the case and as a matter of law, a proximate cause of his death. The result was deplorable in the extreme, one that appeals profoundly to every humane feeling. But these considerations cannot affect the liability of the defendant in the case.

The judgment is affirmed. This opinion will be substituted for the original, now withdrawn.