## WHITE'S AUTO STORES et al. v. BOAZ et al.

### No. 5493.

Court of Civil Appeals of Texas. Amarillo.

Nov. 23, 1942.

Rehearing Denied Dec. 21, 1942.

T. R. Boone and Kearby Peery, both of Wichita Falls, for appellants.

Storey, Storey & Donaghey, of Vernon, and Bouldin & Bouldin, of Mineral Wells, for appellees.

JACKSON, Chief Justice.

Mary A. Boaz, a widow, the surviving wife of Asa Boaz, deceased, with the three children of herself and her deceased husband as plaintiffs, instituted this suit in the District Court of Wilbarger County against the defendants, Charles H. Avery and White's Auto Stores, a partnership composed of W. Earl White, Tom C. White, W. A. White and George C. Adams. None of the plaintiffs secured a recovery except Mary A. Boaz and inasmuch as the other plaintiffs do not complain of the judgment we will give no further attention to any claim presented by the children or the disposition thereof.

Mary A. Boaz, the surviving wife, hereafter called the appellee, recovered a judgment against the defendants for damages in the sum of $6,000 alleged to have been sustained by her on account of the death of her husband, which she contends was the direct and proximate result of the negligence of the defendants. The defendants alleged numerous acts of contributory negligence any one of which would defeat the appellee's claim for damages.

No complaint is made of the sufficiency of the pleadings and we deem it unnecessary to state in any detail the allegations of appellees' cause of action or the acts of contributory negligence pleaded as a defense since the cause of action and defense as pleaded are revealed in the special issues submitted by the court and the answers of the jury thereto.

The testimony shows that Highway No. 183 extends between Oklaunion, Texas, and Davidson, Oklahoma, and is intersected about four miles north of Oklaunion by a country road which is graveled a short way from the highway. The highway runs in a northerly and southerly direction but in this opinion we shall refer to such directions as north and south and we shall refer to the directions of the country road as east and west. About 8 o'clock p. m. on May 8, 1941, Asa Boaz was walking west on the graveled road approaching the paved highway. The defendant, Charles H. Avery, at the same time was driving a truck south on Highway No. 183 approaching the intersection. By the graveled road on either side of the highway there was a stop sign warning those entering the highway of the danger from passing traffic. About the same time an unnamed gentleman driving an unidentified car, hereinafter called the unknown car, north on the highway had passed the intersection and Mr. W. L. Clifford was following some three or four hundred yards in the rear. Mr. S. L. Duncan lived three hundred yards west of the intersection on the country road and at the same time was out in front of his house looking toward the intersection. The unknown car and the truck driven by Mr. Avery passed, according to the estimate of the different witnesses, from 100 to 300 feet north of the intersection. Mr. Boaz, while crossing the highway, was struck by the truck driven by Mr. Avery and died from the collision.

The court instructed the jury to find Charles H. Avery, who was driving the truck of the defendant, guilty of negligence because he was approaching the intersection at a speed in excess of 25 miles per hour. The jury found that this speed of Avery, instructed by the court to constitute negligence, was a proximate cause of the collision and death of Asa Boaz. The jury also found that the defendant Avery failed to keep a proper lookout for per-

sons and vehicles as he approached the intersection of the country road with Highway No. 183; that such failure was negligence and a proximate cause of the death of the deceased; that the defendant failed to slow his truck when passing the unknown car north of the intersection; that such failure was negligence and a proximate cause of the collision; that by the exercise of ordinary care the defendant Avery could have passed the deceased by driving to the left or east side of him and such failure was negligence and a proximate cause of the injury; that the defendant Avery immediately prior to the collision was operating his truck at an excessive rate of speed; that the excessive speed was negligence and a proximate cause of the injury; that the defendant Avery failed to slow his truck as he approached the intersection of the graveled road and the highway but that such failure was not negligence and not a proximate cause of the injury; that the defendant Avery did not fail to have his truck under proper control as he approached the intersection of the road and the highway; that the defendant Avery, after passing the unknown car north of the intersection, did not fail to exercise ordinary care and prudence in turning on the bright long-range headlights of his truck; that the deceased did not step from behind the unknown car into the path of the truck driven by Avery; that he did not fail to keep a proper lookout for the truck driven by the defendant Avery prior to going on the main traveled portion of Highway No. 183; that he saw the truck driven by Charles H. Avery at the time the deceased approached Highway No. 183; that at the time he so approached the highway he proceeded on across the intersection but, notwithstanding he saw the truck and proceeded to cross the intersection of the highway, such acts were not negligence and not the proximate cause of the collision; that the deceased Asa Boaz, as he approached Highway 183 did not fail to stop to ascertain any oncoming traffic that was on the highway; that he did not fail to keep such a lookout as an ordinarily prudent person would have kept while he was on the intersection of Highway 183 and the graveled road.

On these issues the court rendered judgment for the appellee, Mary A. Boaz, for the sum of $6,000 and this judgment is presented for review on proper points assigned as error.

The finding of the jury that Avery failed to slow his truck as he passed the unknown car was negligence and a proximate cause of the death of the deceased is too remote to sustain the judgment of the court for damages. This is made certain by the fact that the jury found that Avery failed to slow his truck as he approached the intersection of the graveled road and Highway 183, but that such failure was not negligence and not a proximate cause of the collision. The finding of the jury that immediately prior to the collision the defendant was operating his truck at an excessive rate of speed and this was negligence and a proximate cause of the injury cannot furnish a basis for sustaining the judgment because the jury found that Avery did not fail to have his truck under proper control as he approached the intersection of the graveled road and the state highway. Northeast Texas Motor Lines, Inc., v. Hodges, 138 Tex. 280, 158 S.W.2d 487, by the Supreme Court is authority for the conclusion last announced.

The appellants by proper motion requested the court to direct a verdict in their behalf because the testimony was insufficient to show that the defendants were guilty of actionable negligence and for the reason that the evidence shows that the deceased, Asa Boaz, approached the main traveled Highway No. 183 in the night on a country road and that stop signs had been duly erected warning Mr. Boaz to stop before entering upon the highway and exercise caution for his own safety and in failing to do so was guilty of contributory negligence as a matter of law.

Without discussing the sufficiency of the testimony to sustain one or more of the negligent acts of which the jury found the appellants guilty and a proximate cause of the death of deceased, we have concluded that the record shows Mr. Boaz was guilty of contributory negligence as a matter of law and appellee is not on account thereof entitled to recover.

The record shows without dispute that the locomotion of the deceased was not defective; that he had no physical or mental impairment; his sight and hearing were normal; that he had lived in the vicinity for some years, knew of the highway and that quite a bit of travel passed over it both day and night. Highway No. 183 is a cardinal highway and traffic thereon therefore has the right of way over

traffic going upon the highway over country roads entering it from the sides. Stop signs had been placed on either side of the highway to warn the public, one of whom Mr. Boaz was, of the danger of driving or walking onto the highway from a country road entering it on the side. These stop signs were silent admonitions to travelers to take proper precaution for their own safety. It was at night and dark. There was nothing to obstruct the view of Mr. Boaz either north or south of the intersection and there was nothing to interfere with the view of Mr. Avery.

■ In Southland-Greyhound Lines, Inc., v. Richardson, Judge, et al., 126 Tex. 118, 86 S.W.2d 731, 733, Commissioner Smedley approves the definition of contributory negligence, which reads as follows: "'Contributory negligence' is such an act or omission on the part of the plaintiff, as amounting to a want of ordinary care and prudence, as concurring or co-operating with some negligent act or omission, if any, of defendant, is a proximate cause of the injury."

■■ If a pedestrian prior to going on a highway takes suitable precaution for his own safety it is a fact issue as to whether he exercised ordinary care in going upon such highway but, if he goes upon a cardinal highway where traffic thereon has the right of way over travel entering the highway from the side without the exercise of ordinary care to avoid injury to himself, he is guilty of contributory negligence as a matter of law. Koock v. Goodnight, Tex.Civ.App., 71 S.W.2d 927, 932. In the last case cited the court says: "It is now a matter of common knowledge that cardinal highways of the state are designed and constructed primarily for rapid transit thereon by motorcars; and that this character of vehicle has come to be the universal and almost exclusive means of transportation over such highways."

We desire to add to the statement quoted that it is a matter of common knowledge that traffic on a cardinal highway such as 183 is accorded the right of way over traffic going on the highway from the side on a country road.

Mr. Clifford, who was the first party on the scene after the collision, and who was the first witness called by the appellee, after testifying that he saw Mr. Boaz about 6 or 7 o'clock in the afternoon of the accident and stating he was following this unknown car, testified that he was two or three hundred feet south of the intersection and the unknown car was about 150 to 200 feet north of the intersection when he observed Mr. Boaz as he approached the highway on the graveled road and "from the best observation I had of it Mr. Boaz was approaching or had approached this road intersecting the highway from the east as near the center of the graveled road as I could tell. He was in motion crossing the concrete slab." The following interrogatories were propounded by the attorney for appellants and the witness gave the following answers:

"Q. As you drove up there where was Mr. Boaz the first time you saw him? A. You mean on my approaching the road intersecting the highway?

"Q. Yes, sir. A. He was just entering the highway.

"Q. He was just entering the highway? A. Yes, sir, was my first view of him. * * * He possibly could have been on the gravel. He was either on or near the concrete.

"Q. And when you first saw Mr. Boaz he was standing approximately at a point near the east line of the highway? A. Yes, sir.

"Q. Was he standing still on the east side when you first saw him or was he moving? A. He was in motion.

"Q. Was he running or walking? A. He was walking the best I could tell.

"Q. Did he stop when he got near the center of the pavement? A. Not that I noticed.

"Q. Never stopped but continued to walk? A. Yes, sir."

Mr. S. L. Duncan, who resides about 300 feet from this intersection, and whose house is near the graveled road, was looking at the intersection when the collision occurred. In response to the following questions propounded by the attorney for the appellee, he made the following answers:

"Q. Whereabouts at your place were you at the time of that collision? A. I was standing out in front of my house.

* * * * *

"Q. About what time of the day or night was this? A. Well, it was about 8:00 o'clock, I suppose, something like 8:00 o'clock, just good dark.

* * * * *

"Q. At that time what direction were you looking, east or west, or what direction? A. I was looking east.

"Q. Towards the intersection of the two roads which you have testified about? A. Yes, sir.

"Q. Did you or not see any cars or trucks going and traveling on that paved road? A. Yes, sir.

"Q. Then did you see any truck coming south? A. Yes, sir.

"Q. Which crossed the country road at the intersection first? A. The car.

"Q. The car. It was going north, I believe you say? A. Yes, sir.

"Q. And the truck south? A. That is right.

"Q. Did you see Mr. Boaz at the time the car crossed the country road at the point of intersection? A. No, sir.

"Q. Did you observe the meeting of the car and the truck after the car passed the intersection going north? A. Yes, sir.

"Q. In your opinion, about how many feet north of the point of intersection of the two roads did the car and the truck meet? A. Well, in my opinion it was something like 100 yards down there.

"Q. One hundred yards? A. Yes, sir.

"Q. That would be something like 300 feet? A. Something like that.

"Q. How far did you say you were from the pavement when you saw this? A. About 100 yards.

"Q. About 300 feet? A. Yes, sir.

"Q. When did you first see Mr. Boaz? A. I saw him when this man driving the truck pulled his lights on the bright.

"Q. About how far was the truck from Mr. Boaz when the dimmers were thrown off and the lights went on?

\* \* \* \* \*

"A. Well, I would say 20 or 30 feet, or something like that.

\* \* \* \* \*

"Q. Did you see Mr. Boaz? A. I saw him when he pulled his lights on the bright.

"Q. Where was Mr. Boaz then? A. Well, it looked as though he was just coming on to the pavement.

"Q. How far was Mr. Boaz from the west edge of the pavement when he was struck? A. Well, I couldn't tell; it looked as though he was about midways of the pavement, that is, the west section of the

pavement; that is the way it looked to me; I couldn't tell exactly."

Defendant Avery while on the stand testified that the first he saw of the deceased was immediately after he switched his lights from the dimmers to bright and that Mr. Boaz was approximately in the center of the highway and about 30 feet in front of his truck.

No witness testified that the deceased stopped before going onto the intersection and none said he looked to the right or left as he walked on to the intersection nor as he crossed the intersection to ascertain whether any motor vehicle of any character was approaching. The testimony in the record fails to support the finding that the deceased stopped as he approached the highway; that he kept a proper lookout or that he exercised such care for his own safety as a man of ordinary prudence would exercise under the same or similar circumstances.

In Dales v. Thompson, Tex.Civ.App., 162 S.W.2d 156, it is held a motorist driving onto a railroad crossing with which he is familiar at a speed of five miles per hour in front of a moving train is guilty of contributory negligence as a matter of law though the engine bell is not ringing. The same rule is applied to automobiles moving on cardinal highways. Koock v. Goodnight, supra.

In Texas Consolidated Theaters, Inc., v. Mauldin, Tex.Civ.App., 152 S.W.2d 930, the appellee, Mr. Mauldin, was driving 40 miles per hour at the time of the collision. He was looking ahead, he testified, but did not see the car parked on the highway with which he collided before he ran into it. He stated that just prior to the collision the lady accompanying him at the time was sitting on the other side of the car facing him. The jury found that appellee was under the influence of intoxicating liquor but that was not a proximate cause of the collision; that the appellee did not keep a proper lookout on the occasion of the accident and the latter omission was negligence but not a proximate cause of the accident. The jury further found that appellee did not discover the parked car before striking it which was not negligence. The court held that, under the testimony, the findings of the jury were not supported by the testimony and that appellee's failure to keep a proper lookout was negligence as a matter of law.

This court held in Burton v. Billingsly et al., Tex.Civ.App., 129 S.W.2d 439, that where a motorist while he was in the center of the block admitted that he saw the automobile by which he was struck approaching at a high rate of speed but proceeded to make a left-hand turn and cross the street in front of the approaching car without observing whether its speed had been reduced, was guilty of contributory negligence as a matter of law in failing to exercise proper precaution for his own safety.

In Kalify v. Udin, 52 R.I. 191, 159 A. 644, 645, the Supreme Court of Rhode Island holds: "It is well established that a person who attempts to cross a much-traveled highway without looking in both directions and reasonably observing approaching vehicles is guilty of negligence as a matter of law."

In Zuck v. Larson, 222 Iowa 842, 270 N.W. 384, the Supreme Court of Iowa holds that where a pedestrian goes onto the pavement on a cardinal highway without looking toward an approaching automobile almost upon him he is guilty of contributory negligence as a matter of law which authorized the court to peremptorily instruct a verdict in favor of defendant.

In Kuhnhausen v. Woodbeck et al., 2 Wash.2d 338, 97 P.2d 1099, 1104, the Supreme Court of Washington says: "Certainly it was appellant's duty to look for approaching traffic before entering upon the paved portion of St. Johns avenue, and it is equally certain that if appellant looked neither to the right nor left after she left the graveled path and entered upon the highway, it must be held as matter of law that she was negligent."

If we indulge the presumption that before the deceased was observed, by any witness, approaching the highway he stopped and looked for approaching vehicles, then the conclusion is inescapable that he saw the truck coming toward the intersection upon which he was entering and stepped out on the main traveled part of the highway in front of the oncoming truck and continued in an ordinary walk until struck some five to eight feet before he reached the south side of the pavement. The testimony fails to show with certainty the exact speed of the truck or the precise distance it was north of the intersection when the deceased walked on the highway. The testimony shows that after he stepped upon the pavement he never looked to the right or left and made no effort to avoid being struck or, if he did, the truck was so near upon him he could not avoid the collision. If he looked and observed the truck approaching and failed to keep a proper lookout after he walked onto the highway such failure would constitute contributory negligence as a matter of law. Burton v. Billingsly et al., supra; Lewis v. Martin, Tex.Civ.App., 120 S.W.2d 910; Keeling v. Neuss Floor Covering Co., Inc., et al., 126 Conn. 716, 14 A.2d 33; 45 C.J. 1159; Gillett v. Michigan United Traction Co., 205 Mich. 410, 171 N.W. 536, 537.

In Robb v. Pike, 119 Fla. 833, 161 So. 732, the Supreme Court of Florida holds that a man of mature years without any impairments, physical or mental, who deliberately walked at an ordinary rate of speed in front of an approaching automobile about which he knew certainly is guilty of contributory negligence.

In Goldberg v. Kelly, 340 Pa. 430, 17 A. 2d 390, the Supreme Court of Pennsylvania says: "Knowing that traffic was approaching from the one direction in which he could expect it, and with nothing to distract his attention, it was appellant's duty to maintain observation of the approaching automobile's position. Having omitted to continue to look as he proceeded, he failed to exercise the high degree of care which this Court has repeatedly held pedestrians traversing a street between intersections must exercise for their own safety, and was therefore chargeable with negligence as a matter of law."

■ The law is settled in Texas that regardless of the negligence of which the appellants were shown to have been guilty the appellee is not entitled to recover if it be shown that the deceased could himself have avoided his death by the use of such precautions as would be used by an ordinarily prudent person under the same or similar circumstances.

■ In our opinion, the record shows that deceased was guilty of contributory negligence as a matter of law in failing to keep a proper lookout and in failing to take any precaution for his own safety before he walked on the main traveled portion of the highway but, in the event the finding of the jury that he did take proper precaution is sustained, then he is guilty of contributory negligence as a matter of

law in walking on the highway in front of the oncoming truck and in failing to observe the approaching truck after he had reached and was crossing the pavement.

The judgment is reversed and here rendered.