### BURKE et ux. v. BURKE.    (No. 701.)

(Court of Civil Appeals of Texas. Beaumont. July 2, 1921. Rehearing Denied Oct. 12, 1921.)

1. **Evidence** ⬤⟶471(5)—**Witnesses** ⬤⟶248(2)— **Testimony as to effect of conversation held responsive to question, and not a conclusion of witness.**

In wife's action against parents of deceased husband for proceeds of insurance policies, on theory that husband before his death had instructed his father to have policies changed so as to make wife beneficiary, testimony in answer to question as to the effect of husband's conversation with witness as to whether he intended to change the beneficiary as to all of his policies that "he stated * * * that his intentions were to the effect that his wife should receive all his insurance" *held* properly received as against contention that it was not responsive and was a conclusion of the witness.

2. **Appeal and error** ⬤⟶1050(1)—**Admission of evidence held harmless in view of other testimony.**

In wife's action against parents of deceased husband for proceeds of insurance policies, in which she claimed that the husband had instructed his father to change the policies so as to make her beneficiary, the admission of testimony by witness who had been questioned as to the effect of his conversation with the husband as to husband's intention to change the beneficiary in all of his policies that the husband had stated to witness that his intentions were to the effect that his wife should receive all his insurance, if error, was harmless, in view of further testimony of witness that husband was to name wife as beneficiary in all his policies.

3. **Evidence** ⬤⟶215(3) — **Excerpt from letter held admissible as an admission against interest.**

In wife's action against parents of deceased husband for proceeds of insurance policies on theory that husband had instructed father to change policies so as to make wife beneficiary, excerpt from father's letter to the wife stating that the husband had written him to have the insurance changed *held* admissible as admission against interest.

---

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Evidence ⊕⟹155(8)—Portions of instrument from which excerpt has been offered by one party are admissible only where explanatory of portion first offered.**

The rule that, where a portion of an instrument is offered by one party, the whole may be offered by the other, is applicable only to those portions of the instrument that bear immediately upon and are explanatory of the portion first offered.

**5. Evidence ⊕⟹155(8)—Admission of excerpt from letter did not warrant admission of other portions which were argumentative, self-serving, immaterial, and irrelevant.**

In surviving wife's action against parents of deceased husband for proceeds of insurance policies on theory that the father failed to follow husband's instructions to make the wife beneficiary, admission in evidence of excerpt from father's letter to the wife stating that the husband had instructed him to change the insurance did not warrant admission of other portions in which the father merely sought to testify to his acts in collecting and retaining the proceeds; such portions having no bearing upon the excerpt admitted, and being argumentative, self-serving, immaterial, and irrelevant.

Appeal from District Court, Falls County; Prentice Oltoof, Judge.

Suit by Hazel Marsh Burke against W. Z. Burke and wife. Judgment for plaintiff, and defendants appeal. Affirmed.

Spirvey, Bartlett & Carter, of Marlin, for appellants.

J. D. Williamson, of Waco, for appellee.

O'QUINN, J. Hazel Marsh Burke sued W. Z. Burke and Isabella C. Burke, her father-in-law and mother-in-law, in two separate suits to recover the proceeds of two life insurance policies. Judgment for plaintiff and defendants appeal.

Walter K. Burke was a son of W. Z. Burke and Isabella C. Burke, and while a single man took out two life insurance policies, one in the Woodmen of the World, for $2,000, naming his father as beneficiary, and the other in the Sam Houston Life Insurance Company, later taken over and assumed by the Southland Life Insurance Company, for $2,000, naming his mother as beneficiary. He joined the army in 1917, and while stationed at Camp Travis, on May 27, 1918, married plaintiff, Hazel Marsh Burke, to whom he had been engaged for some two years. Before leaving for France, while in Camp Travis, in June, 1918, he wrote his father, W. Z. Burke, requesting him to have the insurance policies changed so as to make his wife, Hazel Marsh Burke, the beneficiary therein. His said father, W. Z. Burke, had possession of the said policies and had same locked up in a bank in Reagan, Tex. W. Z. Burke did not have the change made in the policies as requested by his son, but kept the policies locked up in his private lock box in the said bank. About August 25, 1918, Walter K. Burke was killed in France, and W. Z. Burke and Isabella C. Burke made proof of his death and collected and appropriated to their own use the proceeds of both of said policies.

The two cases were by agreement of the parties tried together, and were submitted to the jury upon two special issues, to wit:

"First issue: Did Walter K. Burke make a gift of his Woodmen of the World and Southland Life Insurance Company policies to W. Z. Burke and Mrs. Isabella C. Burke, the persons respectively named therein as beneficiaries? In this connection you are charged that in order to constitute a gift of such policies there must have been a delivery of same by said Walter K. Burke to the said W. Z. Burke with the purpose and intention on the part of said Walter K. Burke to pass the title thereto and to relinquish in favor of such persons all future right and dominion over said policies. The burden of proof rests upon the defendants to establish by a preponderance of the evidence the affirmative of this issue. Answer: To which the jury answered 'No.'

"If you have answered 'Yes' to this issue, you need not answer the second issue, but if you have answered 'No' to the first, then you will answer the following:

"Second issue: When Walter K. Burke, deceased, wrote the letter to W. Z. Burke in which he directed his insurance to be changed for the benefit of his wife, did the said Walter K. Burke mean and intend that his Woodmen of the World and Southland Life Insurance Company policies should be so changed? The burden of proof rests upon the plaintiff to establish by a preponderance of the evidence the affirmative of this issue. Answer: To which the jury answered 'Yes.' "

Upon the verdict of the jury judgments were entered in said cases, respectively, in favor of the plaintiff, Hazel Marsh Burke, against the respective defendants, for the amounts of such insurance. Motions for new trial were overruled, and the case is before us for review.

By their first assignment of error appellants complain of the court's admitting in evidence part of the witness Stallworth's answer to the fifth cross-interrogatory propounded to him by appellants, but offered by appellee. The witness was testifying by deposition. He was a soldier in the same division with deceased, Walter K. Burke. The witness, before joining the army, had been in the life insurance business. He first met Walter K. Burke at Camp Travis in June, 1918. He was testifying to conversations he had had with the deceased relative to deceased's having his insurance policies changed so as to make his wife, appellee, beneficiary. The cross-interrogatory reads:

"Cross-interrogatory No. 5: If you say that he (meaning Sergeant Walter K. Burke) spoke of more policies than the large one, the war

risk insurance, then do you undertake to state at this late date that he said he was going to have all of, them changed? Or rather, as to the two small policies, did you and he not talk of them to the effect that they could be changed, or that he might change them?"

The answer was:

"I am positive that he stated that he would have the beneficiaries changed in all of his policies, naming his wife in all of his policies, in the two small policies as well as in the war risk policy, and that his intentions were to the effect that his wife should receive all of his insurance."

[1, 2] The appellants (defendants) did not offer in evidence said interrogatory and its answer, but appellee (plaintiff) did, and appellants objected to the last clause, "and that his intentions were to the effect that his wife should receive all of his insurance," on the grounds that same was not responsive to the question, and was a conclusion of the witness. The court did not err. The answer, including the portion objected to, was responsive to the question, was competent, relevant, and material. The question called for the "effect" of Walter K. Burke's conversation as to whether he intended to change the beneficiary in all of his insurance policies, and the answer stated the effect. The language complained of was but the statement of the witness' best recollection of what deceased said. If it was error, we cannot conceive how it could possibly have been hurtful, and was therefore harmless error.

[3] The second assignment is overruled. The evidence was clearly admissible. The evidence complained of was an excerpt from a letter written by W. Z. Burke to Hazel Marsh Burke on January 27, 1919, relative to the subject-matter of the suit, in which he used the expression, "He wrote me from San Antonia to have the insurance changed." When offered in evidence, this was objected to because, being only a portion of a sentence, it was not intelligible, and, standing alone, conveyed an erroneous impression of the idea intended to be conveyed by the writer, was misleading and prejudicial to the rights of the defendants. The subject of correspondence was the insurance policies constituting the matter in dispute herein, and the person referred to as "he" was well known and understood by all the parties, and the question in dispute was whether "he," Walter K. Burke, had in writing changed the beneficiary in said policies. The excerpt was an admission against the interest of appellants, was material and relevant, and appellants, if they desired, could offer the remainder of the letter, or such portions of same as would bear upon or explain that portion offered and to which objection was made, and which right they exercised later.

[4, 5] The third and fourth assignments of error complain that the court would not permit appellants to read in evidence to the jury the balance of the letter from which the portion offered by appellee mentioned in the second assignment was taken, invoking the rule that, where a portion of an instrument is offered by one party, the whole may be offered by the other. The letter out of which the statement was taken that was offered by appellee was written by appellant W. Z. Burke to appellee, and the portion admitted was an admission against his interest, and, under the rule invoked, only those portions of the letter that bear immediately upon and are explanatory of the portion offered are admissible. A careful inspection of the letter shows that the court permitted appellants to read in evidence so much of the letter as came within the rule. The portion refused was argumentative, self-serving, immaterial, and irrevelant, simply an effort on the part of the writer to justify his acts in collecting and retaining the insurance money. Heard v. Clegg, 144 S. W. 1147; Robertson v. Russell, 51 Tex. Civ. App. 257, 111 S. W. 209.

The fifth assignment of error is:

"The verdict of the jury and the judgment in said cause was contrary to, and not supported by, the evidence."

Appellee objects to our considering this assignment for the reason that same is too general. The objection is sustained. Smith v. Jones, 192 S. W. 799; Ackerman v. Huff, 71 Tex. 319, 9 S. W. 236. But, if the assignment had been such as to require our consideration, it nevertheless must be overruled, for the reason, in the language of counsel for appellee:

"A special verdict, found under articles 1984 and 1985, of the Revised Statutes, is conclusive as to the facts found, and under article 1986 and article 1990 a party cannot complain of a judgment conforming to a special verdict as unsupported by the evidence where he did not assign error to the refusal of the court to set aside such verdict."

"In the motion for new trial there was no error assigned to the answers of the jury to special issues as submitted, and there was no motion to set aside the verdict of the jury on such special issues, and there was no error assigned in the motion for new trial to the refusal of the court to set aside the verdict and enter judgment thereon." Blackwell v. Vaughn, 176 S. W. 912; Scott v. F. & M. Bank, 66 S. W. 485.

However, in any event, the assignment would have to be overruled, for the evidence abundantly supports the verdict of the jury.

There being no error shown in the record, the judgment is affirmed.