**TEXAS CONSOLIDATED THEATERS, Inc., v. MAULDIN.**

No. 10957.

Court of Civil Appeals of Texas. San Antonio.

May 28, 1941.

Rehearing Denied July 2, 1941.

Strickland, Ewers & Wilkins, of Mission, for appellant.

Hill, Greer & Franki, of Mission, for appellee.

SMITH, Chief Justice.

This action was brought by appellee, Mauldin, against appellant, Texas Consolidated Theaters, Inc., and Antonio Balderas, to recover damages for personal injuries sustained by Mauldin in an automobile accident in which his car crashed into the rear end of Balderas' car. It was alleged that at the time of the accident Balderas was an agent of the Theaters corporation, acting within the scope of his employment. Both cars were Plymouths.

In response to jury findings, the trial judge rendered judgment .in favor of Mauldin against both defendants for damages for injuries to his person and his automobile. The corporation has appealed; Balderas has not.

At the time of the accident Balderas' car, headed east, was parked, without lights, in the south (proper) lane of a three-lane and much traveled federal-state highway · which threads the Lower Rio Grande Valley. The accident occurred between the cities of McAllen and Pharr. Mauldin, accompanied by a woman companion, was driving in the same direction at the rate of 40 or 45 miles per hour when his car crashed into the rear end of the Balderas car, knocking or shoving it a distance of 409 feet down the highway, literally demolishing Mauldin's car. Mauldin was seriously injured as a result of the accident.

The jury found that Balderas negligently parked his unlighted car on the highway, which was a proximate cause of the injury. These findings are not attacked by appellant. In partial exoneration of Balderas the jury also found that before driving upon the highway, shortly prior to the accident he first ascertained that he could do so in safety; and that he negligently failed to sound his horn in that movement, but that negligent act was not a proximate cause. The latter findings do not seem to affect the case, however.

On the other hand, the jury found that Mauldin was under the influence of intoxicating liquor at the time, and negligently failed to keep a proper lookout for other cars, but that neither act was a proximate cause; that he did not discover the presence of the Balderas car on the highway prior to the time of the collision, but that was not negligence. The jury also found that Mauldin was not driving his car at a rate of speed in excess of forty-five miles per hour, or at a dangerous or excessive rate.

It follows, therefore, that the judgment against the defendants below rests solely upon the unchallenged jury finding that

Balderas' negligent act in parking his unlighted car on the highway was a proximate cause of Mauldin's injuries. Of course, that finding requires affirmance, unless there were material procedural errors, or unless, as appellant contends, Mauldin himself was guilty of negligence which, as a matter of law, was a proximate cause of his own injuries. We are genuinely indebted to counsel for both parties for an unusually able and helpful presentation of the appeal.

The facts of the case were developed solely from appellee's own witnesses; appellant offered no testimony upon the trial.

■ It seems to be undisputed that that section of the highway on which the accident occurred is a paved standard three-lane Federal-State highway, each lane being 16 feet wide, making the total width of the pavement 48 feet. The two cars involved here were headed east, one parked and the other moving towards it in the south (or right) lane. The paved portion was flanked on each side by broad shoulders, which afforded ample space on which Balderas could have parked his car, or on which Mauldin could have passed around the Balderas vehicle, as an alternative to taking the middle lane, designed for that purpose and available to Mauldin on this occasion. This stretch of the highway was level and straight, with no obstructions to the view of travelers thereon. We think we can take judicial notice of the fact that this is one of the most traveled highways in Texas.

According to his testimony, Mauldin was driving at the rate of 40 miles per hour at the time of the collision; his car and its equipment were in good condition, and traveling at that rate of speed he could have brought the car to a stop within a distance of fifty feet; he was accompanied by a married woman, a long-time friend of his family; they had been together the past two hours, during which they visited some night clubs along the highway, and had taken some drinks of whiskey and eaten supper together; he was looking ahead, but did not see the parked car before he ran into it. When asked what he and his companion "were doing the last time you remember before the accident," he answered, "Well, I was driving and she was sitting across on the other side of the car, facing me, leaning slightly against the door, partially against the door, halfway against the door, and back against the seat." It was in this connection the jury found that appellee "was under the influence of intoxicating liquor," (which was not a proximate cause) and did not keep "a proper lookout for other motor vehicles, persons and things," on the occasion of the accident, and that the latter omission was negligence, but not a proximate cause of the accident. And the jury further found, in this connection, that appellee did not discover the parked car before striking it, which was not negligence.

Four other persons, neither of them interested in the case, and all of them witnesses for appellee, testified they saw the parked car just before the collision. Only one of the four was under any duty to keep a lookout for the car. Two of them were occupants of a third car moving west on the north lane of the highway and therefore in opposite direction from appellee and the parked vehicle. They passed along opposite to the parked car just before the accident, and observed the car, which was disclosed to them by the lights of appellee's car then approaching it from the rear. They sensed danger in the developing situation, and after passing opposite to the parked car looked back with the mutual comment that appellee's car was about to ram the Balderas vehicle, the very thing which happened in the next instant. These two witnesses were strangers to the transaction; they were under no duty to keep a lookout for the parked car on the far lane, and yet they observed it, nevertheless, by the aid of the lights on appellee's car as it approached the obstacle directly in appellee's path.

Another of appellee's witnesses was in his bedroom 200 feet of the highway, on the south. He had heard Balderas noisily tacking show bills and slamming his car doors. This witness, retired for the night in his bedroom facing the highway, was disturbed by the noise and decided to go out and put a stop to it. While dressing, he looked out his window and saw the silhouette of the parked car, and then saw it by the light of an approaching car, which does not appear to be identified in the record. It seems at this juncture he sensed danger of an accident, and rushed out of his house, but this accident occurred immediately and before he could get out

where he could see the impact. The record does not disclose whether it was appellee's, or a third car, whose lights disclosed the parked car to the disturbed householder. If it was appellee's, then it inevitably follows that its lights would have disclosed the presence of the parked vehicle to appellee had he exercised the least care, since the same lights clearly showed the car to a resident at least 200 feet away and to the side. Appellee urges that those lights were from another car immediately preceding him, which pulled to the left into the middle lane and thence around the parked vehicle and back into the south lane. But, if the lights had been from the speculative third car, as appellee strenuously contends, the fact can give no comfort to appellee. For, if such a third car did immediately precede appellee and did pull out into the middle lane and go safely around the parked vehicle, that very movement ahead of appellee was a warning to him that danger lay just ahead; and, incidentally, is almost conclusive against appellee upon the issue of proximate cause. The third driver by keeping a proper lookout avoided the accident; appellee, negligently failing to keep a lookout (as found by the jury), drove headlong into the obvious danger.

■ The fourth witness for plaintiff upon the matter under consideration was one Davidson, driving his own car. He was following appellee, at the rate of 50 miles per hour. When he drew near to appellee, he pulled his car to the left toward the middle lane, intending to pass appellee. But as he pulled out and looked down the highway ahead of appellee to see if the way was clear he saw, by the lights of appellee's car, the Balderas car parked 75 yards ahead, whereupon, deciding he could not safely undertake the intended movement, he dropped back into line behind appellee, who continued on (at at least 40 miles per hour) and almost immediately crashed into the Balderas car. Here again appellee's contribution to a proximate cause is strikingly demonstrated. For, by keeping a proper lookout, Davidson saw the danger and avoided it; appellee, negligently failing to keep a lookout, drove heedlessly into it. We hold, as a matter of law, that under all this testimony, undisputed and coming solely from appellee's witnesses, his negligence in failing to keep a proper lookout was a proximate cause of his own undoing.

■ The judgment against Texas Consolidated Theaters, Inc., is reversed, and the case appearing to have been fully developed, judgment will be rendered that appellee take nothing from said corporation. In all other respects the judgment is affirmed.

Reversed and rendered in part; in part affirmed.