JAKE HEIDEBRINK, appellee, v. VERLE MESSINGER et ux., appellants.

No. 47744.

(Reported in 44 N.W.2d 713)

NOVEMBER 14, 1950.

Bedell & Bedell, of Spirit Lake, and Cornwall & Cornwall, of Spencer, for appellants.

Corcoran & Kennedy, of Sibley, for appellee.

SMITH, J.—All witnesses agree it was a clear moonlight night a little after midnight, November 14, 1948. Plaintiff with four passengers was driving his 1936 Chevrolet sedan in a southerly direction on paved Highway No. 9 about a mile north of

Sibley. His motor stalled and before they got it started they were struck by defendants' car traveling in the same direction. There was a verdict and judgment for plaintiff and defendants appeal.

The sole question presented here is whether the trial court should have directed a verdict for defendants on the ground that plaintiff's car was parked (a) without a taillight and (b) on the paved portion of the highway contrary to law without any excuse shown for not parking on the shoulder.

Plaintiff's car stalled after some preliminary trouble. He testifies:

"It started to spit and cut up. I put the car in second gear. That gives the motor more chance to run in gear, it speeds up faster. The engine then died and the car stopped * * * three or four feet from the black [center] line of the pavement. * * * I was the driver and my wife and Mr. Wessels were in the front seat. Johnny Noor and Lucille Muhlenbruch were in the back seat. * * * I went around, lifted up the hood on the left-hand side. * * * Mr. Noor * * * was inserting the crank and George [Wessels] was out there with a flashlight shining under the hood * * *. We saw a car coming down the road from our rear. I started back up the road to warn the oncoming car and to see if we couldn't get a push. I was 75 to 100 feet back of my car when the oncoming car passed me * * * and collided with my car. My car went on down the highway a short ways and then ran in the ditch * * *. My wife and Miss Muhlenbruch were in the car. The oncoming car * * * traveled 5 to 6 feet after hitting my car. My car was parked on the pavement three or four minutes before it was struck."

The testimony of Noor and Wessels is substantially the same. Plaintiff says he tried the starter after the car stopped and before he got out to crank it. He also says his car was equipped with taillight but he did not notice whether it was burning or not. Noor says the headlights were on but does not know whether the taillight was burning or not—"I was never in back of the car." Wessels' testimony is practically the same as Noor's. No witness testifies directly that the taillight was burning before the accident. Mrs. Heidebrink says the dash light was on.

Defendant, who was alone, testifies (on direct examination):
"I didn't see any taillight nor any other lights on that car."
But he becomes more aggressive on cross-examination: "I can
say positively there were no lights on the Heidebrink car and
there was no person coming up the paved highway." He ex-
plains, however, he was coming around a left curve, that there
was another car coming toward him with lights shining in his
face and he was watching the black line in the pavement. Plain-
tiff and Noor both testify no car passed from the time plain-
tiff's car stopped until after the accident.

Testimony as to the speed of the Messinger car varied from
" 55 to 60," "about 60," and "60 to 70 miles per hour." Plain-
tiff says it did not slow down before the collision. Both plain-
tiff and Noor estimate defendants' car was about a quarter of a
mile away when they first saw it. Noor says "you could see
down the highway a good quarter of a mile * * * in either direc-
tion." All witnesses agree the pavement was dry and there was
no rain or snow or ice.

Defendant Verle Messinger had been hunting ducks in the
afternoon and was on the way from his home at Spirit Lake to
Sioux Falls, S. D., expecting to meet a man there at 5:30 a.m.
for further hunting. He had left Spirit Lake "around a quarter
of twelve" and "planned to spend the night in Sioux Falls." He
had a duckboat on top of his car with decoys in it.

Of course we are presenting the evidence favorable to plain-
tiff since we are to determine whether verdict should have been
directed against him.

I. Was there evidence tending to show plaintiff's tail-
light was lit? There was affirmative testimony that his car was
equipped with legal taillight, that the car was in good state of
repair, having come from the repair shop two or three days
earlier and that the headlights and dash lights were burning.

This made a prima facie case, perhaps as good a one as nine
out of ten drivers could make after being crashed into from be-
hind, if suddenly accused of having no taillight burning. Would
the case have been any stronger had there been direct testimony
that the light was functioning properly "at sometime not more
than a few days prior to the accident"? Defendants, in argu-
ment, seem to concede that would be sufficient.

That one's rear light was burning at a given moment is a proposition that usually could only be established by circumstantial evidence. The ordinarily prudent man does not inspect his taillight so carefully as to be able to testify it was lit at a particular time.

Furthermore, there was not such positive testimony that the light was not burning as to overcome the prima facie case as a matter of law. Defendant Verle Messinger was not so positive of the matter when interrogated by his own attorney, when he only said he *"didn't see* any taillight." The cross-examination, as frequently happens, was more successful.

But we agree with the trial court there was a jury issue under the record. We cannot say as a matter of law that the taillight was unlit. Isaacs v. Bruce, 218 Iowa 759, 765 et seq., 254 N.W. 57.

II. Defendants also contend plaintiff was "guilty of contributory negligence as a matter of law because he parked his car on the paved portion of the highway and offers no excuse for not parking it on the shoulder."

Sections 321.354 and 321.355, I. C. A., are the pertinent statutes. The first one prohibits parking on the paved highway "when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles * * *."

Section 321.355 makes the foregoing statute inapplicable "to the driver of any vehicle which is disabled while on the paved * * * portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

The record here furnishes testimony sufficient to go to the jury under these sections. We have said the word "impossible" may be construed to mean "not reasonably practicable." Boger v. Kellner, 239 Iowa 1189, 1191, 33 N.W.2d 369. "A literal construction would almost nullify the statute." Boger v. Kellner, supra. See Uhlenhopp v. Steege, 233 Iowa 368, 7 N.W.2d 195; Smith v. Pust, 232 Iowa 1194, 6 N.W.2d 315; Hayungs v. Falk, 238 Iowa 285, 27 N.W.2d 15.

Defendant argues that "plaintiff parked his car on the paved highway when he knew his motor was quitting and after it stopped he and two men companions made no effort to push it to the shoulder when they got out and tried to start it by cranking."

This was proper jury argument. But we cannot say as a matter of law that plaintiff was negligent in first trying to get his motor started before pushing his car over on the shoulder. Hayungs v. Falk, supra, 238 Iowa at pages 295, 296.

III. Defendants object to the giving of an instruction submitting to the jury the question whether plaintiff's car was equipped with a proper rear light in compliance with statutory requirements. The objection is not to the form of the instruction but to the fact it was given. What we have said in Division I hereof answers this assignment.

Finding no merit in the errors assigned the judgment is affirmed.—Affirmed.

.All JUSTICES concur except HALE, J., not sitting.