**L. E. SOUTHERLAND, Appellant,**

v.

**Leon PORTER et ux., Appellees.**

**No. 6967.**

Court of Civil Appeals of Texas.

Amarillo.

May 31, 1960.

Rehearing Denied June 27, 1960.

Wade, Davis, Callaway & Marshall, Fort Worth, for appellant.

Strasburger, Price, Kelton, Miller & Martin, Dallas, Tom M. Miller, Graham, Royal H. Brin, Jr., Dallas, of counsel, for appellees.

CHAPMAN, Justice.

This is a common-law negligence action brought by appellees, Leon Porter and wife, JoAnn Porter, against appellant, L. E. Southerland, for property damages

occasioned by appellant's truck, being driven by him, colliding with appellees' house trailer left standing on what appellees have referred to as the shoulder of United States Highway 282 between Benjamin and Guthrie because of a flat tire on said trailer. The house trailer had been stopped on the right paved "shoulder" of the highway and red reflectors put out. There were no personal injuries involved on either side. Appellant denied any negligence on his part and brought a cross action for damages to his truck. The case was tried to a jury, which found no negligence on the part of appellees and found several grounds of negligence on the part of appellant and that each was a proximate cause of the collision. Damages in the amount of $2,467 were stipulated by the parties. It is from the judgment entered by the trial court for that amount that appellant has perfected his appeal upon 22 points of alleged error, the first two of which complain of the trial court's admitting into evidence an admission against interest made by appellant and the refusal of the court to permit appellant to testify concerning a settlement conversation he claims occurred.

The testimony admitted is as follows:

"Q. Did he say to you whom he thought was at fault in the accident? A. Yes, sir.

"Q. Whom did he state was at fault? A. Himself."

Appellant was later placed on the stand by his counsel and permitted to testify as follows:

"Q. Mr. Southerland, tell the jury whether or not you ever, on any occasion, told Mr. Leon Porter, the plaintiff, that you thought this collision was your fault? A. I did not.

"Q. Did you ever on any occasion tell anybody anything like that? A. No, sir. I did not.

"Q. Do you feel that it is your fault? A. No, sir.

"Q. Tell the jury whether or not on any occasion you told Mr. Porter that you felt you owed this to him or anything to him? A. No, sir.

"Q. Did you ever tell anybody in his presence anything like that? A. No, sir.

"Q. Did you ever tell anybody on any occasion anything like that? A. No, sir."

■ Had the objection been made that such testimony was an opinion and conclusion and invaded the province of the jury we believe it would have been good. Zepeda et al. v. Moore, Tex.Civ.App., 153 S.W.2d 212 (writ refused); A. B. C. Storage & Moving Co., Inc. v. Herron et ux., Tex.Civ.App., 138 S.W.2d 211, 216. We find no such objections. Appellee, Leon Porter, was permitted to testify only to the admission against interest. It is true that in the examination of Mr. Porter on voir dire examination, out of the presence of the jury, counsel for appellant was able to get him to testify appellant came to see him for the purpose of trying to work out a settlement. However, during the argument by the counsel to the court and the questioning of Mr. Porter he also indicated Mr. Southerland came to see him to tell him it was his (Southerland's) fault that he collided with the trailer house. Mr. Newberry, counsel for appellees, was relating to the court the questions he would ask Mr. Porter and what he assumed Mr. Porter would say about a conversation he and Mr. Southerland had, demonstrating to the court that no question would be asked by him concerning an offer of compromise. The record in this connection shows the following:

"Mr. Newberry: * * * I assume he will say 'yes' * * * and I will ask, 'when was it', and he will say 'two or three or four months later', I don't know what he'll say, and I'll ask, 'in that conversation was there anything said about whose fault it was;'

and I assume he will say, 'yes' and then I will ask him, 'what did you say' ?—Now, that is all I am going to ask."

"Mr. Marshall: And what did he say to that?

"Mr. Newberry: What did he say? (question addressed to Mr. Porter)

"A. Well, as we went on talking he said that was the purpose in coming up there, that it was his fault and he felt he owed it to us."

It has been textually stated that: "An independent admission of liability is receivable in evidence, though coupled with an offer of compromise, * * *." 17 T. J. p. 564, para. 2. The authors of that statement then go on to say: "It is probably for the trial court to determine whether a statement or offer is an offer of compromise or an admission of the existence of an independent fact, although there is authority to the effect that where the matter is doubtful the court may submit the question to the jury. In determining whether evidence is admissible something must be left to the discretion of the trial court, and where he has determined from the surrounding facts and circumstances that the offer was one of compromise, the appellate court is not authorized to overrule his discretion."

The case cited as authority for the discretion of the trial court is Merchants' Cotton Oil Company v. Acme Gin Co. et al., Tex.Civ.App., 284 S.W. 680. In that case the compromise offered and the admission of liability could not be separated and the court excluded the testimony. In our case they could be separated.

It is also textually stated in McCormick and Ray, Texas Law of Evidence, Vol. 2, Section 1142, para. 2, p. 31 that: "Independent admissions of liability are admissible in evidence even though coupled with an offer of compromise. But this rule does not apply where the admission is so tied up with the offer that they cannot be sepa-

rated. * * * Whether a particular statement or offer is an independent admission or an offer of compromise appears to be a question for the court." This rule of discretion in the trial court is recognized by Justice Culver in Ditto v. Piper et al., Tex.Civ.App., 244 S.W.2d 547.

Another case cited by the text writer just quoted is Farmers' State Bank & Trust Co. et al. v. Gorman Home Refinery et al., Tex.Com.App., 3 S.W.2d 65, 67. Justice Speer in speaking for the court said: "It is well established that while an offer to compromise and thus buy one's peace is itself no evidence of such admission, yet, if in making such offer, independent of such offer, a statement is made which tends to show an admission of liability, it will be heard in evidence, the same as any other admission against interest." Additional authorities against appellant's contention is found in Alling et al. v. Vander Stucken et al., Tex.Civ.App., 194 S.W. 443 (writ refused); Sanford v. John Finnigan Co., Tex.Civ.App., 169 S.W. 624 (writ refused); Leija v. American Automobile Ins. Co., Tex.Civ.App., 242 S.W.2d 814.

Appellant was allowed to testify as fully concerning the admission of fault as appellee Porter. Since he denied making the statement any testimony of the details of the conversation could not have been in explanation of the portion of the conversation introduced by appellee Porter. The following authorities restrict the admission of additional portions of a conversation, instrument or transaction. Burke et ux. v. Burke, Tex.Civ.App., 233 S.W. 990; McAuley et al. v. Harris, 71 Tex. 631, 9 S.W. 679, 683. In the last cited case the Supreme Court said: "All of a conversation is not admissible because a part of it has been used by the other side; only such other part of the conversation as relates to the same subject is admissible, unless the whole conversation is admissible on other grounds."

■ There is still a further reason we are compelled to say that the record re-

quires us to overrule appellant's first two points here under discussion. We recognize that Rule 373, Texas Rules of Civil Procedure, dispenses with the need of formal exceptions to the rulings of the trial court but such rule does not eliminate the need for a bill in writing signed by the Judge containing the evidence offered. It is textually stated in Texas Law of Evidence, McCormick and Ray, Vol. 1, Section 30, pp. 31–32 that: "Where the rule excludes evidence counsel must show what the proffered evidence is or what the expected answer of the witness would have been." This statement is supported by the following authorities: Gulf Paving Co. v. Lofstedt et al., 144 Tex. 17, 188 S.W.2d 155, 159; City of Houston v. Huber, Tex. Civ.App., 311 S.W.2d 488, 499; Amend et al. v. Kay et al., Tex.Civ.App., 304 S.W.2d 735; Bradford et al. v. Magnolia Pipe Line Co., Tex.Civ.App., 262 S.W.2d 242; Texas Lloyds v. Laird, Tex.Civ.App., 209 S.W.2d 937. There is no bill in this record showing what appellant's testimony would have been had he been permitted to testify to other matters in his conversation with Leon Porter.

■ In his next four points appellant complains of error of the trial court in refusing his motion for a mistrial and overruling his motion for a new trial because of alleged misconduct of Juror George Humphreys and misconduct of the trial judge in connection with an alleged prior acquaintanceship between Juror Humphreys and a partner of one of the attorneys for appellees. Complaint is also made that Juror Humphreys at the time of the examination of the panel concealed a prior acquaintanceship with JoAnn Porter, one of the appellees. The complaint is wholly without merit. The record shows that Mr. Humphreys knew her father only as an oil field worker in the county at one time and did not even know Mrs. Porter personally. He was not asked during examination of the panel if he knew her father and her maiden name was never used until after the testimony began.

■■ It is just as clear to us that Mr. Humphreys did not conceal a prior acquaintanceship with Henry Strasburger, one of the partners of Mr. Newberry, an attorney of appellees. The record shows that Mr. Humphreys did not even recognize who was being inquired about when the panel was asked if they knew Mr. Strasburger. Mr. Humphreys testified:

"A. I met Mr. Strasburger up here, I guess, twenty years ago when they had a trial up here. But to know him, I wouldn't know him if he came in that door right now.

\* \* \* \* \* \*

"Q. Did you ever see him other than the one trial? A. No sir.

"Q. Now, at any rate when the panel was asked, when I asked the panel for any member who did know Mr. Henry Strasburger, to raise their hand, you did not raise your hand, did you? A. Well, I don't know whether I did or not. I just don't remember. In fact, I never did recognize who you were talking 'bout until after the trial and during recess, on that day, or some time of the day, or the next day, and Louis—uh—Louis was talking about a case, and asked if I remembered Henry Strasburger and that law suit up here, and I remembered he could remember everybody who was on the jury's name. That's the first I knew—connection with Mr. Strasburger or Newberry being connected."

Additionally, the record shows appellant also learned of this prior acquaintanceship during the trial before the case had gone to the jury and told his counsel about it. It has been held that under such circumstances the complaint comes too late. Trinity Universal Ins. Co. v. Rose, Tex.Civ. App., 217 S.W.2d 425; Insurors Indemnity & Ins. Co. v. Brown, Tex.Civ.App., 172 S.W.2d 174 (writ refused). Further, under Rule 327, Texas Rules of Civil Procedure, the burden is upon the complaining party to show probable harm even if there was mis-

conduct. Ray v. Gage et al., Tex.Civ.App., 269 S.W.2d 411; Greenwade v. Bledsoe, Tex.Civ.App., 282 S.W.2d 75; Tudor v. Tudor, Tex.Civ.App., 311 S.W.2d 733.

Appellant's counsel filed an affidavit by himself contradicting the testimony at the hearing for mistrial. At the most such affidavit only raised a question of fact which the trial court resolved against appellant, making such question final as to us. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462.

There is also clearly no misconduct on the part of the trial judge shown in this connection. There is not any record testimony that it came to the judge's attention during the voir dire examination that Mr. Humphreys had previously been acquainted with Mr. Strasburger and further we are unable to see how such matter could have influenced Mr. Humphreys in any event.

■ Appellant also takes the position that simply because Mr. Humphreys was at one time Sheriff of the county and was foreman of the 6666 Ranch that employed two of the jurors that he influenced them improperly. A complete answer to such position is found in Mr. Humphreys' testimony made on the motion for mistrial when he said he did not express himself on the issues during the deliberations any more than the other jurors and that "as far as the people are concerned I never was acquainted with them and in the first place when I set on the jury I just decided from the evidence, not from where I like or dislike somebody." Any conflict in the record to this statement was resolved by the trial court against the claim of misconduct and we are bound thereby. Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62. Accordingly, all four points are overruled.

■ In his next two points appellant complains of misconduct of the trial court in making comments during the trial upon the alleged weight of the evidence. During cross-examination of Mr. Porter counsel

for appellant was attempting to impeach him with statements in his deposition as to whether he parked his trailer house on pavement or gravel. It is without dispute in the record that the sides of the highway were hard surfaced but were of a different color and mixture to the other part of the pavement and only contained gravel mixed with tar. Porter admitted he parked it on the new part, or the sides, which he referred to as the shoulder. When counsel for appellee objected that no predicate had been laid for impeachment the court replied: "It sounds like it helps more than it hurts * * *" and "I think the witness is taking care of himself in the deposition, Fred."

A study of the record as a whole indicates the statements just related as made by the trial court were correct, but he still should not have made them, whether they were a comment upon the evidence or a comment upon the weight of the evidence. However, under Rule 434, Texas Rules of Civil Procedure we believe we are without authority to reverse the case and send it back for another trial because of the court's comments for the reason that we are not of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

■ The rule of presumed prejudice no longer exists in Texas and the mere fact that findings favorable to appellees were made by the jury does not mean they were influenced to do so by the remarks complained about. Walker v. Texas Employers' Insurance Association, 155 Tex. 617, 291 S.W.2d 298, 301. "A determination of whether the error 'probably did cause, the rendition of an improper judgment' by influencing the jury to return a verdict it probably would not otherwise have returned is to be made from an examination of the record as a whole." Walker v. Texas Employers' Insurance Association, supra. The record as a whole indicates to us the jury would have returned the ver-

dict they did whether the court had made any comment or not. They had ample reason to do so if they believed appellees' theory of the case and the record shows they did believe it. See also Burgess et al. v. Sylvester, 143 Tex. 25, 182 S.W.2d 358; Safety Casualty Co. v. Hinton, Tex.Civ. App., 197 S.W.2d 226.

▬▬ The next point with respect to the comment of the trial court was during the argument of appellant's counsel. Mr. Marshall in making his argument said: " * * and Mr. Newberry misquoted his testimony there * * * he told me Mr. Terry said there was a reflector down there a hundred feet to the rear. * * * "

Mr. Newberry commented "I didn't say anything of the kind, judge."

The court then commented, "No, sir, I don't think you did."

Objection was made to the court's remarks and he then said: "I think I'll restate what I said there for the purpose of the record, Clyde. I said that to the remarks he said there was one to the rear extending about a hundred fee. Now, that's my recollection and I'll give you a bill on it."

Again, we say the trial court should not have made the remarks. Frankly, we do not know to whom he was referring in the last statement just quoted, Mr. Newberry or Mr. Terry. We do not believe, however, there was harmful error. The jury heard all the evidence and all the arguments and knew themselves as to what Mr. Terry said and whether Mr. Newberry misquoted him in his argument. Under the authorities last above cited we hold no reversible error was committed but we cannot refrain from warning trial judges of the impropriety of such comments. We do not believe the record as a whole shows the jury was influenced by such remarks but we can envision cases where they might be.

▬▬ In his ninth point appellant complains of error of the trial court in permitting Mr. Newberry, one of appellees' lawyers, to tell an anecdote in the presence of the court, the lawyers, and the jury.

One of the jurors was a few moments late one day during the trial. The court told an anecdote about a juror being late. Then Mr. Newberry told one about a judge being late. According to the story the judge announced in open court that he was fining himself $25 but was remitting the fine. This anecdote had no inference whatever that could possibly prejudice anyone and it requires no citation for us to say the point is completely without merit. In his tenth point appellant complains of the court's refusal to permit him to testify concerning the part of the highway he had observed the public traveled prior to the collision. The following is the record:

"Q. Mr. Southerland, had you observed other traffic on this highway between Guthrie and Benjamin along about the time and immediately prior to this collision? A. Yes sir.

"Q. Did you or did you not, observe whether other traffic used, in traveling down the highway, used this new paved portion along each side?

"Mr. Newberry: Again I object to that as being—when I object please don't answer to the court—I object to that as being highly irrelevant and immaterial and having no bearing on the issue at all. The only issue being what this man did and whether or not
—

"Court: That is probably as far as he is going on that matter.

"Mr. Marshall: Your Honor, we submit that what other people do is very relevant to decide what is the traveled portion of the highway.

"Court: Go ahead.

"Mr. Newberry: I would like my exception, your Honor.

"Court: All right.

"Mr. Marshall: Now Mr. Southerland, have you observed other trucks traveling this portion of the highway—

"Mr. Newberry: Your Honor, he is dead set on bringing in things that are not in any way connected with this case—they are not relevant to this case. What these two individuals did is all that should be in.

"Court: I think we are getting off now, Clyde.

"Mr. Marshall: Your Honor, if you sustained his objection now, what did you overrule in the proceedings a minute ago?

"Mr. Newberry: What was the question?

"Q. Have you noticed other trucks using this portion of the highway? The portion paved along the side of the highway—

"Mr. Newberry: Your Honor, I object to all this line of questioning about what any other trucks have done— what other people do can have no bearing on what this man does?

"Court: I think that is correct. I sustain that objection."

As may be seen, the questions did not inquire whether the new gravel and tar part of the highway was generally used for traffic or used as much as the center portion or constituted part of the main traveled portion of the highway. But in any event, even if it could be said that the testimony in the form offered was admissible, there is not any bill of exception in the record showing what the testimony would have been. Where testimony is excluded because of objections to a question the complaining party must show by a bill of exception what the witness would have answered. Here we refer to the same authorities cited on the same question in dis-

cussing Points One and Two. Additionally, appellant had already elicited practically the same testimony from appellee Porter. From the record before us no reversible error is presented on appellant's Point Ten. In his eleventh point appellant asserts error of the trial court in overruling his objections to the submission of the issues involving failure to keep a proper lookout. This point is without merit. Appellant's own witness and the driver of another of his trucks who was driving just ahead of appellant testified he saw one of the reflector lights on the highway to the rear of the trailer. When asked if he could see reflectors about a quarter of a mile away he answered, "Well, I don't know, about a quarter of a mile away." Mr. Porter testified he placed two reflectors out to the rear of the trailer and the record shows there were small lights on the back of the trailer house. Appellant testified he did not see anything until he was about a car length away. This testimony is certainly sufficient for the court to submit the question to the jury and for them to find the appellant was not keeping a proper lookout. Ford et ux. v. Phillips et al., Tex.Civ.App., 250 S.W.2d 752; Riojas v. Riojas, Tex.Civ. App., 289 S.W.2d 802; Esparza v. City of El Paso, Tex.Civ.App., 296 S.W. 979; Texas Consolidated Theaters, Inc. v. Mauldin, Tex.Civ.App., 152 S.W.2d 930. Such failure may be established by circumstantial evidence. Flowers v. Central Power & Light Co., et al., Tex.Civ.App., 314 S.W.2d 373; Kimbriel Produce Co., Inc. et al. v. Webster et al., Tex.Civ.App., 185 S.W.2d 198.

In his twelfth point and thirteenth point error is asserted in the submission of issues inquiring if appellant's failure to turn to the left in time to avoid the collision was negligence and a proximate cause of the collision because there is no pleading to support the issue and because it assumed a disputed fact. Whatever may have been the error in submitting the issue it would not be reversible in this case because there is at least one

issue of negligence and proximate cause with sufficient pleadings and evidence to support them. However, they were not excepted to in the trial court on the grounds that pleadings did not support them. If they had the pleadings could have been amended. Objection not made and presented to the court before the charge is submitted to the jury are considered waived. Lewis et al. v. Reichel, Tex.Civ. App., 256 S.W.2d 216; Stephens v. Anderson, Tex.Civ.App., 275 S.W.2d 869. The point is overruled.

In his fourteenth point appellant urges error of the trial court in overruling his objections to the submission of issues concerning his failure to have control of his vehicle, "because there was no pleading and no evidence." We do not deem it necessary to discuss this point any further than to say there are other issues submitted and answered upon which the court was justified in rendering judgment for appellees and that the submission of issues five and six did not amount to a comment by the court or place undue emphasis on appellees' claims. We shall not discuss Point Fifteen because appellant does not even contend it presents grounds for reversal.

Points Sixteen and Seventeen assert error of the trial court in refusing a new trial because of improper jury argument. The first improper jury argument urged is with respect to comments made to the jury by Mr. Newberry concerning pictures introduced of the highway and the right-of-way thereof. The inferences were made from the pictures themselves and brought to the jury's attention the fact that the drop from the main traveled portion of the highway where appellees would have had to pull their trailer house in order to get it off the shoulder where it was parked was greater than it looked in the pictures. We believe the record supports such inferences. The testimony shows there was more than a 30-inch drop while the views of the pictures make it look almost level. "Counsel are given much latitude in argu-ing issues of fact, and this applies to inferences drawn from evidence offered." Ford Motor Co. v. Whitt, Tex.Civ.App., 81 S.W.2d 1032, 1038 (writ refused); Marvin Drug Co. v. Couch, Tex.Civ.App., 134 S.W.2d 356. No objection was made to the argument. We do not think it was error but even if it had been it certainly was of a nature that could have been cured by instruction had objection been made. Younger Bros., Inc. et al. v. Myers et al., Tex., 324 S.W.2d 546.

The other point urged as error in argument is with respect to Mr. Newberry's reply to argument concerning Mr. Porter's testimony. Mr. Marshall had urged discrepancies in Mr. Porter's testimony and drawn inferences that he did not tell the truth. Mr. Newberry in answering the argument said:

"Ladies and gentlemen of the jury. You've just heard something that maybe I can point out to you. Clyde started out talking about not accusing Mrs. Porter of intentionally stating a falsehood on the stand. And he explained that everybody tries to justify their actions and things like that. You know he was doing things like that to gain your confidence, to show what a gentleman he is and then he stands up there and calls us a flat liar.

"Mr. Marshall:

"Your honor. We object to that statement, I did no such thing.

"Mr. Newberry:

"I said that Mr. Southerland didn't make that statement to Mr. Porter.

"Mr. Marshall:

"Let me make this statement. I want to object your honor to the statement that the counsel made to the jury that I said Mr. Porter was a flat liar. That is entirely untrue and it is made for the purpose of inflaming and prejudicing this jury.

"Mr. Newberry:

"It is absolutely true. You didn't use that terminology—and you just flat put it in other words.

"Mr. Marshall:

"Now let me finish my objection. Now I want to request the court to instruct the jury not to regard that statement.

"Court:

"Ladies and gentlemen of the jury, you won't regard the statement where he said he called him a flat liar."

We do not believe this argument was such as could not be cured by instruction. In the recent case of Younger Bros., Inc. v. Myers, supra, our Supreme Court has said [324 S.W.2d 550]:

"During the heat of trial extravagant and ill-considered statements are often made. The prejudice resulting from such remarks can generally be removed by an admonition to the jury from the presiding judge and we are unwilling to accede to the proposition that juries pay little or no attention to the instructions of trial judges. We do not regard the improper argument made in this case as being beyond correction by means of a proper instruction. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; Rogers v. Broughton, Tex.Civ.App., 277 S.W.2d 121, wr. ref. n. r. e."

This statement by Justice Norvell seems particularly appropriate to the point here under discussion. Though Mr. Newberry should have used more aesthetic and intellectual propriety in arguing his point we cannot say the trial court abused its discretion in denying a motion for new trial based thereon where he had instructed the jury not to consider it.

■ Points Eighteen and Nineteen urge error of the trial court in overruling

appellant's motion to disregard the jury answers to named special issues which inquire as to appellee Porter parking the trailer house where he did, because he contends the overwhelming weight of the evidence shows Porter was guilty of negligence per se in so parking it.

All these issues were answered in favor of appellees. The first statutory violation urged is Section 93(a) Article 6701d, Vernon's Ann.Civ.St. prohibiting parking on the paved or main traveled part of the highway when it is possible to park off such part and that in any event, a portion of the highway shall be left for passage of other vehicles and a clear view of 200 feet in each direction. There certainly was sufficient evidence of an unobstructed width of the highway free for passage of other vehicles for the court to submit the questions to the jury complained about and no contention was made that there was not a clear view for a distance of 200 feet in each direction. This leaves the questions of whether the trailer was on the paved or main traveled part of the highway and if so whether it was possible within the meaning of the statute for it to have been left off such part.

Both appellees and the witness Hopkins testified the trailer was entirely off the main roadway and was on the shoulder. Appellant contends the shoulder was part of the main traveled part of the highway. Fred Hopkins, a student at that time in North Texas State, who came upon the scene of the accident testified: "The trailer that was on that car was on the north side, in other words, it was off on what I would call the shoulder. * * * It was off the highway."

The Sheriff of the county testified with respect to the trailer: "Well, it was sitting right on what we call here, the reinforced shoulder." Mr. Porter testified:

"Q. Mr. Porter, about how wide is that highway. The main traveled portion? A. About 24 feet."

He testified then that in addition to the 24 feet there was a shoulder made of gravel and tar of a different color to the other part of the highway. Mrs. Porter testified:

"A. Well, he was off on the shoulder, he was clear off, he wasn't on the road at all.

"Q. And, was any portion of that trailer when you left there that night sticking off?

"A. No, sir, it wasn't. I wouldn't have let him leave it that way."

The court submitted an issue as to whether Mr. Porter left the trailer standing in such manner that all or any part of it was upon the main traveled portion of the highway and the jury answered in the negative. We believe the testimony raises the question submitted and that the record does not show as a matter of law that the trailer was left on the main traveled portion of the highway.

The Fort Worth Court of Civil Appeals in Hommel v. Southwestern Greyhound Lines, Inc., et al., 195 S.W.2d 803, 805, stated:

"It has frequently been held in this state, and in other jurisdictions having statutes similar to ours, that 'the main traveled portion of any highway' means that portion commonly used for vehicular traffic and if, as in this case, there is a concrete or similar pavement provided for such use, the Penal Code, supra, is applicable only to that part of the highway. Jackson v. Edmondson, Tex.Civ.App., 129 S.W.2d 369, reversed on other grounds, but above holding approved by Supreme Court, 136 Tex. 405, 151 S.W.2d 794; Ligon v. Hommel, Tex. Civ.App., 189 S.W.2d 23. Last cited case was the venue trial of the same case now before us. See also Mlynar v. A. H. Merriman & Sons, 114 Conn. 647, 159 A. 658; Ketchum v. Pattee, 37 Cal.App.2d 122, 98 P.2d 1051."

The 20-foot concrete slab referred to in the Hommel case from which we have just quoted would be similar to the 24-foot asphalt in the instant case.

In the California case of Ketchum v. Pattee, cited in the above quote the court was considering a statute similar to ours here under consideration. Plaintiff in that case had parked on a shoulder of oil macadamized material parallel and adjacent to their ordinary traveled portion and the court held he was not negligent per se in so doing. We so hold in our case.

■ Since the jury found the trailer was not left parked in such manner that any part was upon the main traveled part of the highway and since we believe the evidence supports the finding it seems unnecessary to write upon the question of whether it was possible to park it off such main traveled portion of the highway. However, if we should be in error in holding that the evidence was sufficient to find the trailer was not parked on the main traveled portion we believe the circumstances shown by the evidence would have made it impossible within the meaning of the statute to have parked it off to the right of the improved shoulder on which it was parked. With the flat on the right rear the trailer was leaning to the right. It would have been necessary to pull it considerably forward so as to avoid a tree and the slope to the right forward of the vehicle where it would have been necessary to pull it to get off the gravel and tar shoulder was more than 30 inches lower than the highway. In fact, at the culvert shortly ahead the testimony shows the drop from the pavement to the ground was something like 5 feet. With the trailer loaded heavily, as the testimony shows it was, it could easily have turned over.

Appellant by brief asserts Mr. Porter testified it would have been possible for him to pull it off. We do not so interpret his testimony. The following is the record:

"Q. There was nothing there to prevent you from pulling off at all, on this grass or unpaved portion of the road was there? Or by the side of the road? A. With the slope like that out there, you can't pull a trailer house off the pavement like that. I didn't pull it off, I was on the shoulder.

"Q. Well, was there anything that would have prevented your pulling it off had you wanted to? A. Nothing would have stopped me, I guess, if I had wanted to."

There is authority to the effect that "possible" as used in statutes such as the one here under discussion does not mean possibly in the absolute sense but that the quoted words "should be given a practical construction" and construed to mean "not reasonably practicable." Boger v. Kellner, 239 Iowa 1189, 33 N.W.2d 369, 370; Heidebrink v. Messenger et al., 241 Iowa 1188, 44 N.W.2d 713; or "In a reasonable practical sense." Capital Motor Lines v. Gillette, 235 Ala. 157, 177 So. 881, 883. In Tarry Warehouse & Storage Co. v. Price, 76 S.W.2d 162, the Fort Worth Court of Civil Appeals has held the question is one for the jury.

■ Appellant also asserts issues having to do with Section 121 of Article 6701d should not have been submitted since a violation thereof was without question and constituted negligence per se. Without passing on the question as to whether Section 121 was applicable to the situation of this case we do say it would have required a finding of proximate cause, since the rules for determining proximate cause of injuries are the same as a result of failure to observe statutory duties as they are on issues of negligence at common law. Ball et al. v. Gulf States Utilities Co., Tex. Civ.App., 123 S.W.2d 937; Waterman Lumber Co. v. Beatty, 110 Tex. 225, 218 S.W. 363; Alpine Telephone Corporation v McCall et al., 143 Tex. 335, 184 S.W.2d

830. The jury found against appellant on these questions and we believe the evidence was sufficient to support their findings.

In his last two points of asserted error appellant raises the question of the overwhelming weight of the evidence and the cumulative effect of errors relating to comments by the court and misconduct of Juror Humphreys.

With respect to the alleged misconduct of Mr. Humphreys we consider the points completely frivolous and we feel what we have already said above in discussing points in that connection illustrates our position without further comment. As we have also previously indicated we think comments of the trial judge were improper. However, in looking at the record as a whole, we are convinced that the errors committed by the court in his comments complained about did not amount to such denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. To the contrary, we are convinced from the record that the jury would have answered at least the issue of failure to keep a proper lookout against appellant and would have found it to be a proximate cause of the collision whether the trial judge had made the statements complained about or not. It would necessarily follow then that we do not believe the evidence preponderates against the verdict. We believe and so hold, considering all the evidence, that the findings of fact made by the jury are not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. To the contrary, the evidence amply supports at least the failure to keep a proper lookout. The record is such that the jury could well have believed and in fact did believe that the collision would have been avoided if appellant had been keeping a proper lookout. We believe it would have. The driver just ahead in doing so avoided colliding with the trailer. We have studied this record carefully and for long periods

and we do not believe the case should be forced to another trial.

Accordingly, the judgment of the trial court is in all things affirmed.